### In re BOARD OF WATER SUPPLY OF CITY OF NEW YORK.

### In re DAVIS.

### (No. 297/34.)

(Supreme Court, Appellate Division, Third Department.  November 10, 1915.)

EMINENT DOMAIN ☞203—PROCEEDINGS—DAMAGES—ASSESSMENT—EVIDENCE.
 In a proceeding to assess damages for resultant injuries to plaintiff's farm, which was in the vicinity of a municipal water reservoir, evidence *held* to show no damage by reason of depriving the farm of adjacent markets, or decreasing the facilities for transportation of farm products.

 [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 542; Dec. Dig. ☞203.]

Appeal from Special Term, Ulster County.

In the matter of the application of the Board of Water Supply of the City of New York, pursuant to Laws 1905, c. 724, § 42, as amended by Laws 1906, c. 314, § 9, for the assessment of damages for the creation of a reservoir. From an award by the Business Drainage Commission No. 3, and an order of the Special Term confirming the award, to Benjamin O. Davis, the City appeals. Reversed and remanded.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Frank L. Polk, Corp. Counsel, of New York City (William McM. Speer, of New York City, of counsel), for appellant.

Brown & Slosson, of New York City (Harrison T. Slosson, of New York City, of counsel), for respondent.

JOHN M. KELLOGG, J.  This is a very extraordinary award, and rests solely upon the opinions of two expert swearers, one of whom had been sworn in Ashokan Reservoir damage cases 600 or 700 times, and the other over 100 times. Their opinions rest upon no substantial facts, and can only be accounted for by the imagination of the witnesses and the assumption that they had acquired the habit of swearing against the city. The city has taken no land belonging to the plaintiff, or in fact any land adjoining his land. The reservoir is in fact in another watershed than the plaintiff's farm, and the nearest point of the taking line to the farm is about 4 miles. The farm is quite an ordinary hill or side hill farm of 199 acres, 75 acres of which is tillable and meadow land, 25 pasture land, and 99 wood land. It carries a stock of five cows, four calves, a pair of oxen, and a team of horses. The principal injury to the farm value, as claimed by these expert swearers, is that the reservoir has changed the line of the railway,

and has made the station, as they claim, about 4 or 5 miles farther away—as the fact is, about 2 miles—and that the plaintiff has lost the benefit of markets, and that upon the farm was growing about 800 pine, hemlock, and poplar trees, from 4 to 10 inches in diameter and 8 or 10 years old, which would be worth $2 a cord standing for pulpwood, but that the reservoir has put the pulp mill in the vicinity out of business, and therefore the growing trees have no value. They each swear that the damage caused to the farm is $5,000.

Much is made of the claim that the plaintiff bought his supplies and provisions at West Shokan, a village about 8 miles from his farm, and that one year he sold his hay to a dealer in Kingston, who directed that it be shipped to Tannersville or Haines' Falls, and that the shipment to Tannersville would necessarily be over the Delaware & Ulster Railroad, and in a like case he would now be compelled to use the new station, rather than the old one, on that road. The commission, in its opinion, says that the plaintiff sold not over 60 bushel of buckwheat and some hay; that the other products were used upon the farm. If the farm in any year had any surplus products, such as butter, eggs, or apples, they were sold in the little hamlets around, and were not taken to the railroad station. Evidently the local market, or demand in the immediate vicinity, is the best market. Broadhead's Bridge, upon the Ulster & Delaware Railroad, was the railroad station usually used by the plaintiff. It was 6 miles from his farm on the shortest route, which was hilly, with a 14 per cent. grade for 1½ miles, and 6½ miles by the customary route. This station was removed June, 1913, when the railroad was removed north of the taking line. The nearest station on that road now is Ashokan, which is about 8½ miles distant. The opinion states that the new station is not quite 2 miles farther from the plaintiff's property than the old one. The findings show that the city is building a new improved bituminous macadam road to the new station, "and that larger loads can be hauled in less time over the new roads than the old roads, and that transportation by road from the real property described in the claim to the railroad station will be more easy with the new roads than the old roads," but that the new road does not extend the entire distance. It, however, covers practically the entire distance and with a maximum grade of 5 per cent. Evidently the plaintiff's means of reaching the Ulster & Delaware Railroad are better now than they ever were before, and for practical uses the Delaware & Ulster station is more accessible to him than before.

In the other direction is the Ontario & Western railroad, with the station of High Falls about 8½ miles distant from the farm, with a good road. There is a general store at Krumville, where the plaintiff resides, and several general stores in the little hamlets within a few miles of the property. The church, the school, and the post office are at Krumville; a cheese factory is in the vicinity. The farm has been deprived of no substantial advantage which it enjoyed before. The reservoir now occupies the space where many little villages and hundreds of farms formerly were. The people who have been driven from their homes, with their ready money, have gone into the sur-

rounding country, and have purchased places and built houses, with the result that there has been a quick and ready sale for property through that part of Ulster county, and probably a greater degree of prosperity and activity than had ever previously been known. There had been no sales of farms in the vicinity of the plaintiff for a great many years before 1906, when the work began, and there was no real market value. It is also admitted that through Ulster county there has been a gradual improvement in the value of farms in the last 10 or 15 years, in the aggregate from 20 to 25 per cent., and apparently in this locality the greater improvement has been since 1906. The experts swear that in 1906 the farm was worth $13,000; at present, $8,000. Clearly, if the farm was not injured by the reservoir, the natural enhancement of farm values in that vicinity, and the influx of new population and ready money to be invested in farming and farm values, would make the farm much more valuable now than it was at that time. So that the $5,000 which the witnesses estimate as the damages to the plaintiff could not be the real damage on their theory, because their estimate entirely ignores the natural increase since 1906 in farm values and the special increase in these particular localities. The whole evidence makes it clear that the farm is more valuable now than it was in 1906, and that no act of the city has depreciated its value. The little village of Tongore, about $3^7/_{10}$ miles from the property, has increased materially in population and is growing, and the whole country has sustained a substantial improvement, with raised land values.

The only thing which approaches a question of damages is with reference to the pine, hemlock, and poplar trees, and that is a mere shadow. The Hudson River Pulp Manufacturing Company, on a little stream about 2 miles from Brown's Station and apparently about 5 miles from the plaintiff's property, ceased to operate in 1913. There is no evidence that this change had been upon account of any act of the city of New York. The city's counsel claimed that the water in the stream runs as usual, and that the shutting down of the mill was from other causes; and the commission stated that evidence should be produced as to the cause of the shutting down of the mill. No evidence, however, was produced; but in its opinion the commission concludes that the shutting down of the mill was on account of the acts of the city in building the reservoir. The city claimed it was because the supply of pulpwood in the vicinity had substantially disappeared. No wood from the plaintiff's land has been furnished to the pulp mill for 5 or 6 years. The plaintiff's father has a saw and heading mill very near plaintiff's property, and any timber taken from the property was sawed at this mill. The nearest pulp mill now is at Napanoch or Wawsing, about 15 miles distant. But from Accord, about 6 miles from the property, to Napanoch, there is a state road. Nevertheless, it would cost more to take pulpwood from the farm to Napanoch then it would to the Hudson River Mill. The plaintiff says that his timber was young, and none had been cut for 4 or 5 years, because he thought he would wait a few years. The evidence indicates that this pulpwood has been the growth of 8 to 10 years. Most of

the trees available for pulpwood had been removed from the land prior to 1906, and the trees now in question were then very small. We quote the evidence of one of the experts:

"Q. And are almost all of the trees that are there now young trees that have grown up in the last 7 years? A. The majority of them are young trees that have grown for the last perhaps 8 or 10 years."

In 1908 they could have been of but little value, as they were very small. One of the experts concedes on cross-examination that on account of their smallness at that time the trees are worth as much now as they were then. Nevertheless, both witnesses say, in a general way, that the farm is worth $1,600 less now than it was in 1906, on account of the loss of the market for this pulpwood. The evidence shows clearly that it would be a mistaken policy to cut the pine for pulpwood at the present time, as the growing timber is much more valuable, and within a few years the pine timber would be worth many times the present value of the trees as pulpwood. Evidently the same would be true to a less extent as to the hemlock. One-half of all the trees alleged to be suitable for pulpwood are pine, a part hemlock, and a part poplar. The loss upon the pine, if now cut, would more than make up any value which could be received from the hemlock and the poplar. The fact that no pulpwood has been cut for several years past, and that the only wood from the farm has been taken to the father's mill, shows clearly that there is no loss on account of the stopping of operations at the pulp mill. From what took place upon the trial, if it was claimed that the operation of the pulp mill was stopped by the acts of the city, the plaintiff was called upon to prove the fact. We are satisfied from the whole record that the farm has suffered no injury because the pulp mill is closed.

It is urged that a bluestone dealer has been put out of business by the reservoir, and that there is stone upon the property which might reach a market; but it does not appear that the dealer who was put out of business is the only dealer, or that he was buying stone from this farm. The recent sales of bluestone from the farm had been at Accord and High Falls, where there are docks for stone, and that market is still open. The question of loss of markets has no substance, and is a mere excuse by which the swearers seek to bolster up their opinions.

It is needless to go through the whole testimony. A careful perusal of it is convincing that the plaintiff has suffered no possible damage from the acts of the city, but that the results from the building of the reservoir have been in his favor, and his farm is much more valuable and salable today than it was before the city entered upon the enterprise. The pretense that the growing pine and hemlock upon this farm from 4 to 10 inches in diameter has been rendered worthless by the stopping of the pulp mill characterizes the testimony of the experts. Their opinion, with knowledge of the actual facts disclosed by the record, renders their evidence entirely worthless and no proper basis for an award. We quote from the opinion of the commission:

"Though from necessity the expert evidence in its nature is somewhat vague and inconclusive, it may nevertheless compel and support an award."

The mere opinion of a witness as to value is worth less when the facts testified to by him show that his opinion has no foundation in fact. The evidence of the experts, fairly considered, laying aside their expression of an opinion as to the former and present value, shows no injury to the plaintiff, and their opinion as to the value, under all of the circumstances, is worthless.

The order confirming the award is therefore reversed upon the law and the facts, the award reversed, and the matter remitted to another commission.

Order reversed upon the law and facts, the award set aside, and the matter remitted to another commission; the present commission being discharged from further consideration of the claim. If the parties cannot agree upon the commission to hear the claim, application may be made to the court. Costs of the appeal to abide the event. The court disapproves of the finding of fact that the claimant's property has been indirectly decreased in value by reason of the acquiring of lands by the city of New York, and that the amount of damages of said claimant for said decrease in value is the sum of $2,000. All concur.