■ COUNTY OF SULLIVAN, Appellant, v PHILIP G. EMDEN et al., Respondents.—Appeals from (1) an order of the Supreme Court at Special Term, entered July 1, 1976 in Sullivan County, which confirmed the report of the Commissioners of Appraisal, and (2) an order of said court, entered September 9, 1976, which denied petitioner's motion to disallow certain costs. Determination of these appeals was withheld pending submission of a supplemental report by the Commissioners of Appraisal explaining the basis of the award of $19,500 in consequential damages (see *Matter of County of Sullivan v Emden*, 58 AD2d 677). In their supplemental report the commissioners state that the highest and best use of Emden's land before and after the taking was residential. They adopted the analysis of claimant's appraiser and considered the land along the highway as three one-acre lots. Aside from the direct damage award of $483.50 (for taking the .27-acre fee strip and the .02-acre easement), the commissioners found that the three lots were consequentially damaged but the large 43-acre tract to the rear of the one-acre lots was uneffected. They computed the consequential damages as follows:

| Lot No. 1 (improved by residence) | before | $52,500 |
| | after | 42,000 |
| consequential damage | | $10,500 |

| Lot No. 2 | | before | $6,000 |
| | | after | 0 |
| | consequential damage | | $6,000 |
| Lot No. 3 | | before | $6,000 |
| | | after | 3,000 |
| | consequential damage | | $3,000 |

Total consequential damage $19,500

Although the findings of Commissioners of Appraisal are entitled to considerable deference (Matter of Huie [Fletcher—City of New York], 2 NY2d 168, 170), there must be some competent evidence to support their findings (County of Rensselaer v Mechanicville Golf Club, 45 AD2d 912, 913; Matter of Board of Water Supply of City of N. Y., 170 App Div 107; see Matter of Huie [Fletcher—City of New York], supra, p 170 [dictum]). There is no competent support for the $6,000 and $3,000 awards for the vacant lots. Lots Nos. 2 and 3 were changed by the taking in that a 20-foot wide strip was taken along their frontage. Since Emden owns a large tract contiguous to the rear of these lots, their suitability for development was not impaired by loss of the strip and no other basis for consequential damages appears in the record. Lot No. 2 was also encumbered by a 15-foot drainage easement which extended 60 feet into the lot. This easement was taken to allow for drainage of water which might flow through a new culvert under the road. The new 24-inch culvert replaced one 12 inches in diameter at the same point in the road. The commissioners reasoned that the run-off from the larger culvert would flood or threaten to flood Lot No. 2, thus reducing its value to nothing. Even if it were clearly proven that a large flow of water would invade Lot No. 2 as a result of the road altera- tions, it is clear that the lot would retain some value, if only as recreational space. Moreover, the record contains no evidence that the new culvert would increase the water flow. Respondent's case in this regard was supplied by Sidney Horowitz, an engineer, who testified on direct that "a 24 inch culvert * * * will allow approximately four times as much water to go through it as the existing 12 inch culvert will carry." Q. "Why is that?" A. "Well, the County must have designed the new culvert to carry the water that they intended draining from the other side of the new highway." He further stated that the 15- by 60-foot easement could not drain the amount of water which a 24-inch culvert could carry. Horowitz did not explain where the additional water would come from, or how expensive it would be for Emden to drain away any excess water. The county's expert, Mr. Dhawan, an engineer specializing in highway drainage structures, testified that the area drained by the culvert was not changed by the road construction and, therefore, the amount of water passing under the road onto Lot No. 2 would not change. Emden's photographs of the new and old culverts (Exhibits P and Q) support Mr. Dhawan's conclusion, and establish that, at least when the photographs were taken, the flow of water onto Lot No. 2 was negligible and would not impede development of said lot. In sum, there is no compe- tent evidence that the flow of water would increase, and certainly no evidence to support the commissioners' conclusion that the flooding would utterly destroy the lot's value. As for Lot No. 1, there is adequate evidence to support the commissioners' finding of $10,500 in consequential damages. The reconstruction will raise the road in front of the house four feet, causing the crown to be above rather than below the elevation of the first floor. Twenty feet of lawn, including a large tree, were taken, and the right of way line is now 44 rather than 64 feet from the house. Loss of such a

buffer zone is compensable *(Du Bois v State of New York,* 54 AD2d 782). There is also evidence that the reconstruction would severely increase the pitch of the two driveways on Lot No. 1. Emden's expert estimated the cost to cure the pitch at some $5,700. The $10,500 award thus does not "shock the conscience" and it must, therefore not be disturbed *(Matter of Huie [Fletcher—City of New York], supra,* p 171). The judgment of confirmation incorporated an award of $2,694.65 costs, as taxed by the clerk. This was later amended to $2,422.15. These amended costs included $1,250 for expert fees, $200 for photographs, and $1,069.65 representing the 5% additional allowance granted by Special Term (see Highway Law, § 124; Condemnation Law, § 16, subd 2). The county moved to retax costs, challenging the charges for expert fees and photographs. Special Term allowed all the items to stand, stating that the photograph costs were reasonable and expert fees, at least in condemnation cases, were allowable, citing *Mechanicville Urban Renewal Agency v Bruno* (85 Misc 2d 159). The final determination of costs should be made upon confirmation of the report. The award of costs is, therefore, reversed. Since the same dispute over costs will arise again, we note that section 124 of the Highway Law provides for costs to be taxed in accordance with section 16 of the Condemnation Law, which in turn states, in pertinent part, that the condemnee is entitled to costs "to be taxed by the clerk at the same rate as is allowed, of course, to the defendant when he is the prevailing party in an action in the supreme court * * * and the court may also grant an additional allowance of costs, not exceeding five percentum upon the amount awarded." Such Supreme Court costs are governed by CPLR article 83. Expert fees are not among the recoverable disbursements enumerated in CPLR 8301, and it has been held they generally are not recoverable under the discretionary provisions of 8301 *(Hempstead Bank v Ryan,* 42 AD2d 779). Moreover, this court has specifically held that even in condemnation cases such fees are not recoverable *(Matter of Ulster Sewer Improvement, Town of Ulster v Horowitz,* 54 AD2d 808, app dsmd 40 NY2d 1079 [dismissed for lack of constitutional question]). The contrary ruling in *Mechanicville Urban Renewal Agency v Bruno (supra)* is disapproved. The same principle should apply to photograph costs, i.e., absent extraordinary circumstances they should not be recoverable. The question whether Emden should be granted the 5% additional allowance authorized by section 16 of the Condemnation Law will be left to Special Term upon the reapplication to confirm the revised report. At that time, Special Term will also determine what additional compensation the commissioners may be entitled to. Order entered July 1, 1976 modified, on the law and the facts, without costs, by striking therefrom all awards save those of commissioners' fees and by directing the report be returned to the commissioners for revision (see Highway Law, § 122) in accordance with this decision. Order entered September 9, 1976 reversed, on the law and the facts, without costs. Koreman, P. J., Sweeney, Kane, Mahoney and Larkin, JJ., concur.