In the Matter of BOARD OF EDUCATION OF NORTHPORT-EAST NORTHPORT UNION FREE SCHOOL DISTRICT, Respondents-Appellants, and "ABBY" and "RICHARD", Infants, by JOHN P. BRACKEN, Their Guardian ad Litem, Intervenors-Respondents-Appellants, v GORDON M. AMBACH, Individually and as Commissioner of Education of the State of New York, et al., Appellants-Respondents.

Third Department, December 9, 1982

APPEARANCES OF COUNSEL

*Ingerman, Smith, Greenberg & Gross* (*John H. Gross* of counsel), for respondents-appellants.

*Robert D. Stone* (*James H. Whitney* of counsel), for appellants-respondents.

*John P. Bracken,* guardian ad litem, for intervenors-respondents-appellants.

OPINION OF THE COURT

MAHONEY, P. J.

In the years between 1969 and 1971, the New York State Department of Education, concerned over the decrease in college board scores and reports that increasing numbers of students were graduating from high school lacking basic skills, particularly in reading and mathematics, formed a unit known as the State Examination Task Force and charged it with the responsibility of reviewing the State examination program at the high school level and recommending how that program might be improved so as to increase the basic skills of graduates who did not qualify or did not choose to take the Regents examinations. The task force recommended expansion of the existing programs to include increased emphasis on the basic skills of reading, writing and mathematics. This recommendation evolved into an evaluation plan introduced in 1973 which set forth long-range plans for instructional support and included, as one of its key components, a proposal that the State add basic competency tests in certain basic skills during the high school years.

After in-depth staff discussions, aided by input of educators in the public school system throughout the State, a decision was made that basic competency would be tested only in reading and mathematics. Advisory committees were formed and planning began both as to the content of the examinations and the methodology to be used in administering them. The ultimate tests were designed to have an average difficulty level that would permit the average student in the ninth grade to answer 80% of the

questions correctly. Field tests in 1974 indicated that the test contents were valid in that the resultant scores were object related. In March of 1976, the Board of Regents adopted a proposal which made passing the basic competency tests a requirement for high school graduation beginning with the graduating class of June, 1979. Neither the State policy articulated in the proposal passed by the Board of Regents in March of 1976, nor the regulations incorporating the requirement of competency tests subsequently adopted by the Commissioner of Education in July of 1978 (8 NYCRR 103.2 [a] [2]) made any provision for the use of alternative testing techniques for handicapped students or any exception from the diploma requirement for handicapped students who could not be expected to pass the tests.[1]

In the matter before us, "Abby" and "Richard" were students in the Northport-East Northport Union Free School District and both were classified as handicapped.[2] The school district, although fully aware of the requirements of the State regulation, awarded diplomas to these two students in June of 1979 on the basis of successful completion of their respective individualized education programs (IEPs). Neither student had successfully completed both of the basic competency tests.[3]

By order dated August 8, 1979, respondent Commissioner of Education directed petitioner board of education of the school district to reveal the names of any students to whom high school diplomas had been awarded in violation of Part 103 of the commissioner's regulations (8 NYCRR Part 103) in order to revoke unauthorized diplomas. Petitioner then commenced this CPLR article 78 proceeding to permanently enjoin respondents from enforcing that directive. On September 18, 1979, Special Term preliminarily enjoined respondents from enforcing the August 8, 1979

1. Regulations dealing with alternative testing techniques for pupils with handicapping conditions were subsequently promulgated (see 8 NYCRR 103.2 [a] [2] [ii]).

2. Abby suffers from a neurological impairment (8 NYCRR 200.1 [cc] [3]) while Richard is mentally retarded (8 NYCRR 200.1 [cc] [4]).

3. Abby passed the basic competency test in reading but failed the mathematics exam. Richard was not given either of the basic competency tests, apparently because he was not capable of passing either exam.

order and subsequently determined, *sua sponte,* that Abby and Richard should be permitted to intervene in the proceeding and appointed a guardian ad litem for that purpose. Following a trial on a number of issues pursuant to CPLR 7804 (subd [h]), Special Term directed entry of judgment granting the petition to the extent of permanently enjoining respondents from enforcing the August 8, 1979 order and holding that the requirements of 8 NYCRR 103.2 were in violation of Abby and Richard's rights under the due process clause of the Fourteenth Amendment of the United States Constitution (see 107 Misc 2d 830). Special Term denied those portions of the petition which sought relief based upon violations of Abby and Richard's rights under (1) the equal protection guarantees of both the Federal and State Constitutions (US Const, 14th Amdt; NY Const, art I, § 11), (2) section 504 of the Rehabilitation Act of 1973 (US Code, tit 29, § 794), (3) the Education of the Handicapped Act and the Education for All Handicapped Children Act of 1975 (US Code, tit 20, § 1401 *et seq.*), and (4) section 1983 of the Civil Rights Act (US Code, tit 42, 1983).[4] Cross appeals involving all parties ensued, in addition to a separate appeal by respondents from that portion of an amended judgment which directed that the $6,000 in attorney's fees awarded to Abby and Richard's guardian ad litem be recovered from respondents.

■ Before turning to the constitutional and statutory issues, the resolution of which are dispositive, we first reject the contention that respondents do not have the power to determine educational policy in this State and to establish criteria for high school graduation. Indisputably, control and management of educational affairs is vested in the Board of Regents and Commissioner of Education (NY Const, art V, § 4; art XI, § 2; Education Law, §§ 207, 305; see *Matter of New York City School Bds. Assn. v Board of Educ.,* 39 NY2d 111, 116) and determinations of the commissioner, unless patently violative of statutory or constitutional mandate, are beyond the range of judicial oversight (*Donohue v Copiague Union Free School Dist.,* 47 NY2d 440). The adoption of regulations with respect to

---

4. Special Term dealt with the issues raised only insofar as they related to Abby and Richard. It declined to discuss their effect on handicapped children as a class.

graduation requirements, including basic competency examinations, to establish a standard that would make a high school diploma in this State a meaningful credential of the graduate, is clearly within the authority and power of respondents.

### Section 504 of the Rehabilitation Act of 1973

■ We conclude that Special Term correctly held that petitioners[5] had failed to demonstrate any violation of section 504 of the Rehabilitation Act of 1973. That section provides: "No *otherwise qualified handicapped individual* in the United States, as defined in section 706 (7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" (US Code, tit 29, § 794; emphasis added). The United States Supreme Court in *Southeastern Community Coll. v Davis* (442 US 397), in construing section 504 in connection with the right of a postsecondary nursing school to deny admission to a hearing impaired applicant, found this practice to be permissible within the concept of whether the petitioner was an "otherwise qualified handicapped individual" within the meaning of section 504. The Supreme Court held that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements *in spite of his handicap*" (*supra,* at p 406; emphasis added). The court also noted that "[s]ection 504 by its terms does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate" (*supra,* at p 405). The statute merely requires even-handed treatment of the handicapped and nonhandicapped, rather than extraordinary action to favor the handicapped. The Supreme Court in *Davis* (*supra,* pp 411-412) recognized this statutory purpose by stating: "Here, neither the language, purpose, nor history of § 504 reveals an intent to impose an affirmative-action obligation on all recipients of federal funds. Accordingly, we hold that even if HEW has attempted to create such an obligation itself, it lacks the authority to do so."

5. The term "petitioners" includes the board of education and the intervenors.

It follows, therefore, that in *Davis* (*supra*), as here, discrimination against a handicapped person in violation of section 504 of the Rehabilitation Act of 1973 arises only when benefits are denied to an individual who is able to meet all of a program's requirements in spite of his handicap. In the matter before us, Abby is neurologically impaired and Richard is mentally retarded. Abby's IEP included a work study program in horticulture and silk screening and an academic program at the second grade level in mathematics and the third grade level in reading. Richard, concededly, was not intellectually able to pass either of the basic competency tests. Accordingly, respondents' action, as evidenced by its order of August 8, 1979, did not violate section 504 of the Rehabilitation Act of 1973 since neither Abby nor Richard was an "otherwise qualified handicapped individual".

*Education of the Handicapped Act and the Education for All*

*Handicapped Children Act of 1975*

■ Next, we also reject petitioners' contention that the provisions of the Education of the Handicapped Act and the Education for All Handicapped Children Act of 1975 mitigate against the withholding of a diploma from a handicapped student who is unable to meet minimum competency standards. The Federal regulations designed to further the purposes of these acts and relied upon by petitioners do not mandate the award of diplomas to handicapped students who cannot meet the criteria required for graduation. To the contrary, article 89 of this State's Education Law was promulgated to insure compliance with the Federal acts and subdivision 3 of section 4403 of the Education Law states that it shall be the duty of the State Education Department to formulate such rules and regulations pertaining to the physical and educational needs of handicapped children as the commissioner shall deem to be in their best interest. In sum, the Federal acts dealing with education for handicapped students merely provide that the States have procedures to assure that testing and evaluation materials and procedures be provided for the placement of handicapped children. The United States Supreme Court in *Board of Educ. v Rowley* (__ US __, 73 L

ed 2d 690), in that court's first review of the Education for All Handicapped Children Act of 1975, held that a State which receives Federal funds to educate handicapped children need not provide personalized aids, in *Rowley* a qualified sign language interpreter for a deaf student, for students who are being provided adequate instruction calculated by local school administrators to meet their educational needs. In the matter before us, both Abby and Richard were provided with IEPs commensurate with their educational needs and thus we cannot say that they were denied their right to a "free appropriate public education" (US Code, tit 20, § 1412, subd [1]).

### Section 1983 of the Civil Rights Act

Since we concur with the finding by Special Term that respondents' acts did not violate either section 504 of the Rehabilitation Act of 1973 or the Federal acts relating to education of handicapped children, we need not discuss petitioners' actions pursuant to section 1983 of the Civil Rights Act which depend for their validity upon violations of these statutes. Further, we note that although this proceeding was commenced to prevent respondents from compelling petitioner board of education to furnish information about students upon whom the board had conferred diplomas, the proceeding is, in essence, a review of the amendments to Part 103 of the regulations of the Commissioner of Education which require the attainment of minimum competency in basic skills in order to obtain a high school diploma. We submit that the promulgation of regulations is a legislative act and, for purposes of section 1983 actions, respondents have absolute immunity (see *Lake Country Estates v Tahoe Planning Agency*, 440 US 391, 404-405). We also hold that respondents, as government officials performing discretionary functions, acted as administrative officers and are shielded from liability for civil damages by a qualified immunity so long as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware (see, e.g., *Harlow v Fitzgerald*, __ US __, 73 L ed 2d 396, 408-409). We shall return to these section 1983 actions in our subsequent discussion of respondents' alleged violations of the intervenors' constitutional rights.

## *Due Process Clause*

New York State's Constitution places the obligation of maintaining and supporting a system of public schools upon the Legislature (NY Const, art XI, § 1) and that body has vested authority to control and manage educational affairs in the Board of Regents and Commissioner of Education (see NY Const, art XI, § 2; Education Law, § 207). As previously discussed, the courts traditionally have declined to interfere with this broad grant of discretion (*Donohue v Copiague Union Free School Dist.,* 47 NY2d 440, 445, *supra*). Notwithstanding this policy, due process requires the courts to interfere when the State education system unconstitutionally deprives a student of a liberty or a property interest (see *Board of Regents v Roth,* 408 US 564; *James v Board of Educ.,* 42 NY2d 357). Here, petitioners insist judicial inquiry is necessary to protect both the liberty and property interests of Abby and Richard. We disagree.

A property interest exists when an individual has a "legitimate claim of entitlement" in a particular benefit (*Board of Regents v Roth, supra,* p 577). Special Term found that Abby and Richard had a legitimate expectation of receiving a diploma and that such document represented a property interest. We must reject this conclusion because it is based on the false premise that Abby and Richard are capable of completing the requirements for graduating with a diploma as distinguished from graduating with a certificate.[6] As we observed earlier, neither of these functionally handicapped students is capable of passing both of the requisite competency tests and, indeed, their IEPs cannot be equated with a course of studies that would prepare them to pass the basic skill tests. In this connection, we note that the prior practice of petitioner board of education of awarding diplomas to students who only successfully completed IEPs was not only inconsistent with extant regulations (see 8 NYCRR 103.2 [a] [1]), but utterly failed to create a legitimate expectation that could rise to the level of a property right in a diploma for succeeding

---

[6]. School districts are permitted to award "certificates" to handicapped students unable to pass the basic competency tests who have successfully completed their IEPs (8 NYCRR 103.5).

unqualified students. To hold, as did Special Term, that these students had a legitimate expectation that would rise to the level of a diploma upon graduation is to ignore reality and to reject the instruction of the decisional law of the State that a diploma is a credential, by which the conferring institution certifies that the recipient possesses all of the knowledge and skills expected of individuals who have been exposed to a rigorous academic discipline (see *Matter of Olsson v Board of Higher Educ.*, 49 NY2d 408; *Matter of McIntosh v Borough of Manhattan Community Coll.*, 78 AD2d 839, affd 55 NY2d 913). We hold this to be true of the high school diploma as well as diplomas granted at the collegiate and graduate level.

No rule or practice of respondents has created any expectation that students who fail the basic competency tests will be graduated from high school or receive a diploma.[7] Indeed, nonhandicapped students who fail to meet the necessary requirements receive nothing while similarly situated handicapped students may be eligible for a certificate from their local school district (8 NYCRR 103.5). The right to a full and fair education is not at issue in this proceeding. The issue is whether those entities which are constitutionally and statutorily delegated the authority to conduct and manage our State educational affairs can regulate in a manner that insures the integrity of a high school diploma while, unfortunately, denying the receipt of a diploma to some handicapped students.[8] We conclude that while the regulations before us for review have that effect, since those handicapped students with functional mental defects will not be able to successfully complete the

---

7. Although it was not definitively clarified by the State Education Department until April of 1979 that the requirement of passing basic competency tests would apply to handicapped students, there was no language in any of the proposals or regulations passed prior thereto regarding basic competency tests which indicated that they would not be applicable to *all* students seeking to graduate from high school.

8. It must be remembered that not all handicapped students will fail to receive a high school diploma based on their inability to pass the basic competency tests. Since the definition of a handicapped child includes those with physical and emotional problems in addition to those suffering from mental defects (see Education Law, § 4401, subd 1; 8 NYCRR 200.1 [cc]), it cannot be assumed that the basic competency test requirement adopted by respondents will negatively impact all those students classified as being handicapped.

basic competency requirement needed for graduation, they do not impinge on any property right of Abby and Richard.

Turning to the issue of an infringement of a protected liberty interest if diplomas are denied the intervenors, we also conclude that no such interest on behalf of Abby and Richard exists. In order to constitute a deprivation of liberty, the stigmatizing statement must be false (*Codd v Velger,* 429 US 624) and it must be made public by a governmental entity (*Bishop v Wood,* 426 US 341). At most, respondents will have identified Abby and Richard as not having met the requirements for a high school diploma, which is true. Neither have respondents made any public statement about either intervenor.

Moreover, it is undisputed that Abby and Richard, ages 20 and 21, respectively, were performing at a level expected of elementary students and the record is clear that their mental deficits were *functional,* thereby depriving them of ever advancing academically to the point where they could be reasonably expected to pass the basic competency tests. Thus, the issue of whether the three-year notice that such tests would be required for graduating classes beginning in June of 1979, relied upon by Special Term in holding that the due process rights of these two students had been violated, is irrelevant. No period of notice, regardless of length, would be sufficient to prepare Abby and Richard for the basic competency tests now required for diploma graduation.

However, since the August 8, 1979 order of respondents directed petitioner board of education to reveal the names of all students who had received diplomas in violation of Part 103 of the commissioner's regulations, the possibility exists, if respondents prevail in this proceeding, that the list of diploma graduates for 1979 might include handicapped students with remedial mental conditions who, with proper notice, might have had IEPs adopted to meet their needs so as to prepare them to pass the basic competency tests required for a diploma. As to them, a protected property interest may be involved and the issue of notice is, therefore, critical. Accordingly, judicial inquiry is compelled on the issue of whether the notice given in the

instant matter complied with the requirements of due process.

Once it is determined that due process applies, and we have concluded that it might with respect to remedial handicapped children, "the question remains what process is due" (*Morrissey v Brewer,* 408 US 471, 481). In answering this question, we must balance the private interests involved, the risk of an improper deprivation of such interests, and the governmental interest involved (*Mathews v Eldridge,* 424 US 319, 334-335). The burden is on petitioners to prove a violation of their due process rights. It has long been the law of this State that, as a matter of substantive law, every legislative enactment is deemed to be constitutional until its challengers have satisfied the court to the contrary (*Montgomery v Daniels,* 38 NY2d 41, 54). Since it cannot be denied that the State has legitimate reasons for setting diploma requirements in order to protect and insure the integrity of a high school diploma, the only issue we need to decide in determining the degree of due process that must be afforded remedially handicapped children is whether the requirement of basic competency tests, after a three-year notice of such a requirement, satisfies the duty imposed upon the States by the due process clause of the Fourteenth Amendment.

In deciding this issue in favor of respondents, we note that the basic competency tests, structured after extensive efforts by the State Education Department to develop and field an examination referenced to State syllabi in language, arts and mathematics, are achievement tests designed to measure what pupils learn. They are not I.Q. tests. The basic competency tests are fundamental and would form a part of virtually any acceptable reading or mathematics curriculum. As previously noted, the tests are constructed so that the average ninth grade student can answer 80% of the questions correctly. Thus, we are compelled to reject the unsupported evidence of petitioners that the basic competency tests are invalid with respect to content. We also reject petitioners' reliance upon the decisions in *Debra P. v Turlington* (474 F Supp 244, mod 644 F2d 397) and *Anderson v Banks* (520 F Supp 472). While both of these cases dealt with an attack upon the content

validity of examinations for receipt of high school diplomas, in each case the State or school district imposing the competency testing requirement had previously engaged in *de jure* racial segregation in their school systems. In each instance, the courts subjected the tests to strict scrutiny under an equal protection of the law analysis because of the subject classification of race involved, a factor not present here in our due process analysis. In sum, we must conclude that the content validity of the basic competency tests more than adequately resists petitioners' challenge on due process grounds.

Turning to the issue of notice, as an element of the degree of due process owed remedially handicapped children, we hold that the three-school-year notice given here (1976-1977; 1977-1978; 1978-1979) was not of such a brief duration so as to prevent school districts from programming the IEPs of such students to enable them to pass the basic competency tests required for diploma graduation (see *Brookhart v Illinois State Bd. of Educ.*, 534 F Supp 725; *Anderson v Banks, supra*). Where, as here, those charged with the obligation to manage educational affairs act responsibly and regulate in a manner that is not patently wrong, the courts must defer to the statutory grant of discretion.

### Equal Protection Clauses

The equal protection clause of both the Federal and State Constitutions does not prohibit all classifications of persons or require that all persons be treated equally (*Personnel Administrator of Mass. v Feeney*, 442 US 256, 271-272). The guarantee is equal laws, not equal results. Here, petitioners claim that the use of the basic competency tests creates two classes of students; those who pass and receive a high school diploma and those, like Abby and Richard and other students handicapped to varying degrees, who cannot pass and are, therefore, denied diplomas. Petitioners, while conceding that their equal protection claims are not governed by the "strict scrutiny" analysis since education is not a fundamental right (*San Antonio School Dist. v Rodriguez*, 411 US 1, 16; *Alevy v Downstate Med. Center of State of N.Y.*, 39 NY2d 326, 332-333) and handicapped children as such do not constitute a suspect class (*Matter of*

*Levy,* 38 NY2d 653, 658, app dsmd 429 US 805), nevertheless argue that this court should not adopt the standard "rational basis" test to determine if the challenged testing procedures are related to a legitimate State purpose. Instead, petitioners urge that we apply the more structured "middle tier" test adopted by the Court of Appeals in *Alevy v Downstate Med. Center of State of N. Y.* (39 NY2d 326, *supra*). We decline the invitation.

While we agree with petitioners that a careful reading of *Alevy* (*supra*) supports the view that the courts have recently held several State and Federal acts violative of equal protection guarantees even though rational reasons for their enactment were proffered (*supra,* at p 334, and cases cited therein), we reject the view that the amendments to respondents' regulations which conditioned receipt of a local diploma upon successful completion of basic competency tests either created separate classifications of high school students or discriminated, even in a benign sense, against handicapped children. Indeed, section 4402 of the Education Law directs that each school district ascertain the number of handicapped children in each district under the age of 21 years and the nature of each child's handicapping condition. Further, paragraph b of subdivision 1 of that section mandates that each school district establish a committee on the handicapped and empowers that body to invite appropriate professionals most familiar with a child's handicap to appear and advise so that evaluation and placement of each handicapped student can be achieved. The immutable mysteries of genetics, accident, disease and illness are the creators of handicapped children, not the State.

This is not to say that separate classifications of high school students do not exist. Rather, it is to say that the unfortunate disparity between handicapped and nonhandicapped students is not the creation of respondents. Therefore, we conclude that the policy of requiring all recipients of a local high school diploma to successfully complete the basic competency tests is not State action which intentionally discriminates against a class of persons grouped together by reason of accidents of birth or living so as to invoke the so-called "middle tier" test enunciated in *Alevy*

*v Downstate Med. Center of State of N. Y. (supra).* Indeed, the *Alevy* case itself was one in which *race* (reverse discrimination) was the factor that prompted our highest court to adopt an area of review between the traditional "rational basis" and "strict scrutiny" tests. The fact that respondents in this proceeding concluded that it would be better if handicapped children, with an appropriate period of notice (three years) which we have found adequate, had their IEPs modified upward so as to give them a greater chance of passing the basic competency tests does not create any separate classification of students that should compel the employment of the *Alevy* "middle tier" standard.

■■■ Our inquiry is, therefore, only whether petitioners have demonstrated the absence of a rational basis (see *Matter of Levy,* 38 NY2d 653, 658, *supra; Lombardi v Nyquist,* 63 AD2d 1058, mot for lv to app den 45 NY2d 710) for the present plan of requiring passage of competency tests by all students for high school diploma graduation. We conclude that they have not and, accordingly, hold that the protection of the integrity of a high school diploma is both a legitimate State interest and one to which the competency testing program is reasonably related.[9]

### Disbursements and Fees

Following Special Term's determination on the merits of the petitions, a motion was made seeking a discretionary allowance for petitioner board of education in the sum of $3,000, additional disbursements to that party for expert witness fees exceeding $8,000 and stenographic fees exceeding $2,000, and $15,000 in fees for the intervenors' guardian ad litem. Special Term granted petitioner only $566 for its stenographic services and denied its other requests. The guardian ad litem was allowed $6,000 as his fee and respondents were subsequently held to be the party liable therefor.

■ With respect to the discretionary allowance unsuccessfully sought by petitioner board of education, we note

---

**9.** [4] Since we have concluded that respondents did not violate either the due process or equal protection rights of petitioners, no actions pursuant to section 1983 of the Civil Rights Act are maintainable (see discussion, *supra*).

that a court in which a judgment is entered may award up to $3,000 to any party in a "difficult or extraordinary" case (CPLR 8303, subd [a], par 2). It is well settled that granting such an allowance is a matter within the sound discretion of the court and, absent a clear abuse of that discretion, not present here, that determination should remain undisturbed.

A party to whom costs are awarded is entitled to recover "reasonable and necessary expenses as are taxable according to the course and practice of the court, by express provision of law or by order of the court" (CPLR 8301, subd [a], par 12). It is well established that only statutory witness fees may be taxed (*County of Sullivan v Emden,* 59 AD2d 957). In our view, expert witness fees are not recoverable under the discretionary provisions of CPLR 8301 (subd [a], par 12) absent extraordinary circumstances (*County of Sullivan v Emden, supra; Matter of Ulster Sewer Improvement, Town of Ulster v Horowitz,* 54 AD2d 808, app dsmd 40 NY2d 1079). We find no extraordinary circumstances present here and hold that Special Term acted properly in denying petitioner board of education additional disbursements for expert witness fees.

Finally, counsel fees, including those requested by a guardian ad litem, are based on the importance of the case, the novelty and difficulty of the questions involved, the results obtained and customary fees for similar services (see *Matter of Becan,* 26 AD2d 44, 48). Here, while the importance of the case to all parties cannot be denied since the result is determinative, subject to review, of the rights of handicapped children presently attending high school, the issue is not novel. Our courts have consistently struggled with alleged discriminatory practices of State agencies. After reviewing the record in this case and weighing all of the relevant factors, we see no reason for disturbing Special Term's award of $6,000 in attorney's fees to the guardian ad litem and see no reason for increasing that amount due to the guardian's efforts on this appeal. However, since it was the improper act of petitioner board of education which prompted the administrative action taken by respondents which became the subject of this proceed-

ing, the guardian ad litem's fee should be assessed against that party (see CPLR 1204).

The judgment, entered August 5, 1981, should be modified, on the law, by declaring that the requirements of 8 NYCRR 103.2 are not improper or violative of the statutory and constitutional rights of handicapped students and reversing so much thereof as awarded judgment in favor of petitioners, and, as so modified, affirmed, without costs.

The judgment, entered November 25, 1981, should be modified, on the law and the facts, by directing that the guardian ad litem recover his attorney's fees from petitioner Northport-East Northport Union Free School District, and, as so modified, affirmed, without costs.

Kane, Main, Mikoll and Yesawich, Jr., JJ., concur.

Judgment, entered August 5, 1981, modified, on the law, by declaring that the requirements of 8 NYCRR 103.2 are not improper or violative of the statutory and constitutional rights of handicapped students and reversing so much thereof as awarded judgment in favor of petitioners, and, as so modified, affirmed, without costs.

Judgment, entered November 25, 1981, modified, on the law and the facts, by directing that the guardian ad litem recover his attorney's fees from petitioner Northport-East Northport Union Free School District, and, as so modified, affirmed, without costs.