[741 NYS2d 349]

In the Matter of NEW YORK PERFORMANCE STANDARDS CONSORTIUM et al., Appellants, v NEW YORK STATE EDUCATION DEPARTMENT et al., Respondents.

Third Department, May 9, 2002

## APPEARANCES OF COUNSEL

*Weil, Gotshal & Manges L.L.P.,* New York City (*Richard J. Davis* of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Denise A. Hartman* of counsel), for respondents.

## OPINION OF THE COURT

CREW III, J.

Petitioner New York Performance Standards Consortium (hereinafter the Consortium) is comprised of 28 public high schools that advocate the use of performance-based assessments in lieu of State Regents examinations. Specifically, these schools require students to successfully complete five performance-based tasks in the core academic disciplines in order to graduate—a research paper, a literary essay, a scientific experiment, a mathematics project and an oral portfolio presentation/defense. In May 1995, the Consortium received a variance from respondent Education Department permitting its members to utilize the foregoing assessments in lieu of the otherwise required Regents examinations. The variance was effective for a five-year period commencing with the 1995-1996 academic year and was subject to a number of conditions including, inter alia, periodic reviews conducted by the Department.

Thereafter, beginning in 1996, the Department adopted a new set of comprehensive learning standards resulting in, inter alia, an increase in the number of credits required for graduation and the administration of more stringent Regents examinations (*see,* 8 NYCRR part 100). In conjunction therewith, the procedure for reviewing and approving alternative assessments also was modified (*see,* 8 NYCRR 100.5 [a] [5]). Under the new regulations, respondent Commissioner of Education established the State Assessment Panel (hereinafter SAP), which was charged with reviewing any proposed alternative assessments and advising the Commissioner as to whether such assessments were aligned with the revised state learning standards and were as rigorous and reliable as the corresponding Regents examinations. Thus, under such regulations, the

only permissible substitute for the upgraded Regents examinations was an alternative assessment recommended by SAP and approved for statewide use by the Commissioner (*see*, 8 NYCRR 100.2 [f]).

Throughout 1998 and 1999, the Department notified all public high schools, including the Consortium's members, of the revised educational standards and the criteria/procedure for the approval of proposed alternative assessments. Indeed, the record reflects that by letter dated June 21, 1999, petitioner Ann Cook, a member of the Consortium's Executive Committee, was expressly notified of the new criteria and of the need for the Consortium's members to satisfy these new requirements for any future variances. Cook also was advised at this time that the new review process was "a rigorous one which [would] require[ ] extensive time and effort by the entity submitting a proposed alternative assessment." Thereafter, in November 1999, the Consortium applied to SAP for a continuation of the 1995 variance. Upon reviewing such application, and after citing the need for the Consortium to provide it with additional information and data demonstrating the Consortium's compliance with the applicable regulatory criteria, SAP recommended granting a narrow, conditional variance for only those schools included in the original variance and for only those students in the graduating classes of 2000 and 2001 who entered such schools in September 1996 or September 1997. The conditional approval was set to expire in February 2001.

In January 2000, the Commissioner declined to approve the proposed alternative assessment submitted by the Consortium, finding that the Consortium either failed to address certain of the regulatory criteria in its application or failed to submit sufficient information to demonstrate its compliance therewith. As to the requested extension of the then-existing variance, the Commissioner again found insufficient information to render an informed decision on this point. The Commissioner, however, permitted the variance to remain in effect for the 2000-2001 academic year and created the Blue Ribbon Panel (hereinafter the Panel), consisting of nationally recognized testing experts, to evaluate whether the Consortium's proposed alternative assessments satisfied the criteria established by the Department.

In May 2000, the Commissioner and various Department staff members met with the principals and other representatives of the Consortium's member schools to discuss the Panel's evaluation process and to outline the type of data that would

be required in order to demonstrate that the proposed alternative assessments complied with the underlying regulatory criteria. Although the Panel initially was scheduled to complete this evaluation by December 2000, the Consortium's member schools apparently were not forthcoming with the requested information and, therefore, the Panel requested and received a three-month extension in order to gather additional data. In March 2001, the Panel issued its report, concluding that the "dearth of evidence" available to it precluded a finding that the proposed alternative assessment program advocated by the Consortium satisfied the regulatory criteria. Instead, the Panel recommended that the Commissioner issue an interim, nonrenewable three-year variance, thereby affording the Consortium and the Department an opportunity to collect and evaluate the information necessary to render a final decision in this regard.

By determination dated April 19, 2001, the Commissioner found that the proposed alternative assessments submitted by the Consortium did not meet the applicable regulatory requirements and, therefore, approval of such assessments and extension of the requested variance was denied. In so doing, the Commissioner discussed the precise manner in which the Consortium's member schools had failed to demonstrate compliance with each of the requisite criteria. As to the Panel's recommendation that the Consortium be granted a further opportunity to compile and submit additional information, the Commissioner noted that "[t]he Consortium schools have had more than five years to gather data. I am not convinced that additional time will produce better results." Accordingly, the Commissioner established a Regents examination schedule for the Consortium's member schools, noting that the Consortium had the option in the future of developing additional evidence and again applying for a variance from the Regents examination requirements.

Petitioners thereafter commenced this proceeding pursuant to CPLR article 78 seeking to annul the Commissioner's determination. Supreme Court dismissed petitioners' application, finding that the Commissioner's determination was neither irrational, arbitrary and capricious nor affected by an error of law. This appeal by petitioners ensued.

We affirm. Petitioners initially contend that the Department's apparent failure to conduct the periodic reviews outlined in the 1995 variance precluded the Department from denying the requested extension. The 1995 variance was granted subject to a number of conditions, including an annual review of the

participating schools' alternative assessment programs. Such review, in turn, consisted of three parts including, insofar as is relevant to this appeal, a "formative" review by the Department during the first four years of the variance and a "summative" review in the fifth year. The variance further provided that "if for any reason the [Department] does not conduct a review or reviews, the waiver shall nonetheless continue in effect." Seizing upon this final clause of the variance, petitioners argue that the Department's failure to comply with the review procedures entitled the Consortium to an extension of the variance in perpetuity. We cannot agree.

The 1995 variance plainly and unequivocally states that it "shall be effective for a period of five years commencing with the 1995-96 school year" provided the conditions set forth therein are met. In addition to the aforementioned review process, the variance required participating schools to submit an assessment plan on an annual basis and to ensure that the "alternative assessment[s] employed * * * measure curriculum content and student performance standards that meet or exceed the standards reflected by Regents examinations or Regents Competency Tests, as appropriate." Adopting the construction urged by petitioners would, in our view, render the remaining conditions set forth in the variance meaningless. Affording the words employed in the variance their plain and ordinary meaning (*see, Estate of Hatch v NYCO Mins.*, 245 AD2d 746, 747),* we conclude that the contested clause simply means that the Department could not prematurely terminate the variance by failing to conduct one or more of the required reviews and not, as petitioners assert, that the five-year variance continues indefinitely until such time as the Department completes the required review. Thus, the Department's apparent failure to conduct such reviews does not afford petitioners a basis for relief.

Nor are we persuaded that the Commissioner's determination disapproving the Consortium's proposed alternative assessment program and denying the requested variance must be annulled. Statutory and case law make clear that the Commissioner is vested with the authority to enforce the educational policies of this state (*see,* Education Law § 305 [1]; *see also, Matter of New York City School Bds. Assn. v Board of Educ. of City School Dist. of City of N.Y.*, 39 NY2d 111, 116), including the power to promulgate rules and regulations governing

---

* As we do not perceive any ambiguity in this regard, we need not consider the extrinsic evidence relied upon by petitioners.

graduation requirements (*see*, *Matter of Board of Educ. of Northport-East Northport Union Free School Dist. v Ambach*, 90 AD2d 227, 231-232, *affd* 60 NY2d 758, *cert denied* 465 US 1101) and the approval of alternative assessment programs (*see*, 8 NYCRR 100.2 [f]). The case law makes equally clear that in reviewing the Commissioner's determination, our inquiry is limited to whether such determination was arbitrary and capricious, lacked a rational basis or was affected by an error of law (*see*, *Matter of Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ.*, 91 NY2d 133, 139).

Applying these principles to the matter before us, we are unable to discern a basis upon which to annul the Commissioner's determination. In disapproving the proposed alternative assessments and denying the requested variance, the Commissioner addressed each of the regulatory criteria and specified the manner in which the Consortium and its member schools failed to demonstrate compliance therewith. To the extent that petitioners contend that the Commissioner's findings contravene those made by the Panel, we need note only that the Panel played a purely advisory role in this regard and, ultimately, it was the Commissioner's task to determine whether the proposed alternative assessments and variance should be granted.

Equally unpersuasive is petitioners' assertion that the Department's failure to conduct the required review process somehow precluded them from coming forward with sufficient proof to demonstrate their compliance with the applicable regulatory criteria. The record reflects that the Consortium and its member schools had ample and repeated opportunities to provide SAP and the Panel with the information necessary to permit a finding that the proposed alternative assessments should be approved, and their failure to come forward with the requisite proof does not provide a basis upon which the underlying determination may be annulled.

As a final matter, petitioners contend that it has not been demonstrated that the Regents examinations meet the regulatory criteria used to evaluate proposed alternative assessments and, therefore, the denial of petitioners' assessments and the requested variance was arbitrary and capricious. Again, we cannot agree. The worthiness of the Regents examinations is not at issue on this appeal. Moreover, even assuming that some shortcoming in evaluating the efficacy of the Regents program and examinations may exist (and there certainly is no evidence of that here), any such deficiency nonetheless does not excuse

petitioners from demonstrating their compliance with the regulatory provisions governing proposed alternative assessments. Petitioners' remaining contentions, including their assertion that the Commissioner's determination violates their due process rights, have been examined and found to be lacking in merit.

MERCURE, J.P., PETERS, SPAIN and LAHTINEN, JJ., concur.

Ordered that the judgment is affirmed, without costs.