[658 NYS2d 493]

In the Matter of JUDGE ROTENBERG EDUCATIONAL CENTER, Appellant, v THOMAS A. MAUL, as Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities, et al., Respondents.

Third Department, May 22, 1997

APPEARANCES OF COUNSEL

*O'Connell & Aronowitz,* Albany *(Pamela A. Nichols* and *Peter Danziger* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Mara B. Ginsberg* of counsel), for Thomas A. Maul and others, respondents.

*Paul A. Crotty, Corporation Counsel* of New York City *(Ellen B. Fishman* of counsel), for City of New York, respondent.

### OPINION OF THE COURT

MERCURE, J.

Petitioner, a residential school situated in Rhode Island, specializes in the care and treatment of students with severe mental or physical disabilities. Many of its clients exhibit self-abusive and violent behavior and are among the most severely disabled students in the world. In this proceeding, petitioner seeks to compel respondents to pay for the cost of care of certain clients who were originally placed with petitioner by New York City pursuant to the Individuals with Disabilities Education Act (20 USC § 1400 *et seq.*) and Education Law article 89, which establish a system of assuring a free, appropriate education for children with disabilities until the end of the school year in which they turn 21. Each of the subject children has "aged out" (i.e., attained the age of 21) and can no longer be funded under the Individuals with Disabilities Education Act or Education Law article 89.

Although mentally disabled adults are entitled to continued care provided by the State Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD) and the State Office of Mental Health (*see,* Mental Hygiene Law §§ 7.07, 13.07), unlike the Education Department, OMRDD and the Office of Mental Health have no jurisdiction over adult services provided outside the State (*see,* Mental Hygiene Law § 16.00; *compare,* Education Law § 4407 [1] [a]). Prior to 1995, the problem of "transitional care" funding for young adults who had not yet secured an appropriate adult placement and

remained in a children's program for which they were no longer eligible was addressed on an ad hoc basis by annual appropriation bills providing for partial State reimbursement to social services districts that chose to incur the expense of transitional care. In 1994, however, the Legislature addressed the problem on a more comprehensive basis by enacting chapter 600 of the Laws of 1994, which, *inter alia*, added Social Services Law article 8-B, devoted specifically to transitional care. Under chapter 600, no new transitional care placements were to be made after July 1, 1996 (*see*, Mental Hygiene Law § 7.38 [a]; § 13.38 [a]) but social services districts were authorized to expend funds for existing transitional care placements, with 60% of the net cost to be reimbursed by the State after January 1, 1995 (*see*, Social Services Law § 466 [2]). After January 1, 1999, the State would be responsible for the cost of all remaining transitional care placements (*see*, Social Services Law § 466 [6]).

Effective December 31, 1994, New York City decided to discontinue its participation in the transitional care funding program. OMRDD notified petitioner, the affected clients and their guardians that funding would be discontinued. The affected clients were also offered adult placements within the State and they and their guardians were advised of their right to request administrative review of the proposed placement (*see*, Social Services Law § 466 [5]). One day before the scheduled funding cutoff, however, the City and OMRDD reached an agreement, embodied in a January 31, 1995 memorandum of understanding, whereby the City agreed to continue providing funds until June 30, 1995 or such earlier time that a $1.116 million allocation was exhausted. The funds were exhausted on or about May 31, 1995, at which time the City stopped providing transitional care funding. On September 28, 1995, petitioner commenced this CPLR article 78 proceeding to compel respondents to continue paying for the transitional care petitioner provided to the subject clients. Respondents moved to dismiss the petition. Supreme Court granted the motion and dismissed the petition for failure to state a cause of action. Petitioner now appeals, and we affirm.

In our view, the essential legal premise underlying petitioner's primary contention, that respondents were prohibited from discontinuing transitional care funding prior to completion of the administrative review process designed to test the appropriateness of the proposed transfers or the expiration of time periods prescribed therefor, is fatally flawed. The clear

import of Social Services Law § 466, and particularly subdivision (2) thereof, is that although social services districts have the discretion to expend funds to provide transitional care, they are by no means required to do so. A necessary corollary to that principle is that although a social services district that chooses to expend funds is entitled to partial State reimbursement prior to January 1, 1999, the State has no independent obligation to pay. Rather, at the current time, the State's liability derives from and is solely dependent upon the social services district's voluntary determination to provide transitional care funding. Notably, Laws of 1994 (ch 600, § 16) specifically provided that "[n]o provision of this act shall be deemed or construed to create any right, interest or entitlement for any individual to receive mental hygiene, education or social services funds or services, or placement in a mental hygiene facility, or any other right, interest or entitlement to services, funds or placement" (*New York Council for Exceptional People v Pataki*, 220 AD2d 236, 237, *lv denied* 87 NY2d 809; *Brooks v Giuliani*, 84 F3d 1454, 1460, *cert denied sub nom. Brooks v Pataki*, — US —, 117 S Ct 480). Nor does Social Services Law § 466 (5) (a), principally relied upon by petitioner in support of its argument, require a different result. This provision applies only to social services districts that have opted to participate in the transitional care funding program. Because the City lawfully chose not to make payments pursuant to Social Services Law § 466 (2), the procedures in Social Services Law 466 (5) do not come into play.

We also reject the contention that petitioner is entitled to relief under theories of quantum meruit or unjust enrichment. In view of the fact that the City provided advance notification that it would discontinue funding, there can be no valid claim of expectation of compensation (*see, Clark v Torian*, 214 AD2d 938; *compare, Newfield House v Massachusetts Dept. of Pub. Welfare*, 651 F2d 32, 37, *cert denied* 454 US 1114). Finally, petitioner lacks standing to assert its clients' constitutional rights (*see, Matter of Estate of Smith v Atlas Assembly/Crawford Furniture Mfg. Corp.*, 216 AD2d 804, *lv denied* 86 NY2d 711).

Petitioner's remaining contentions have been considered and found unavailing.

Mikoll, J. P., Crew III, White and Peters, JJ., concur.

Ordered that the judgment is affirmed, without costs.