People v Cuttita (2003 NY Slip Op 51506(U))

[*1]

People v Cuttita

2003 NY Slip Op 51506(U)

Decided on December 4, 2003

Supreme Court, Sullivan County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 4, 2003

Supreme Court, Sullivan County
 PEOPLE OF THE STATE OF NEW YORK BY ELIOT SPITZER, Attorney General of the State of New York, ANTONIA C. NOVELLO, M.D., M.P.H., Dr. P.H., Commissioner of Health of the State of New York, THOMAS A. MAUL, Commissioner of the Office of Mental Retardation and Developmental Disabilities of the State of New York, and JOHN A. JOHNSON, Commissioner of the Office of Children and Family Services of the State of New York, Petitioners,
against
FRANK CUTTITA in connection with the operation of the premises located at 6038 and 6039 Neversink Road, Liberty, New York and 428 North Main Street, Liberty, New York, Respondent.
Index No. 48103/03

Eliot Spitzer, Attorney General of the State of New York
By: G. Nicholas Garin, Assistant Attorney General
Attorneys for the Petitioner
235 Main Street
Poughkeepsie, NY 12601
Albert Gaudelli, Esq.
Attorney for the Respondent
16 Tennis Place
Forest Hills, NY 11375
John Ferrara, Esq.
Ferrara & Sullivan
Guardian Ad Litem
P.O. Box 785
Monticello, NY 12701

Mark M. Meddaugh, J.
[*2]
The Petitioners commenced the above-captioned special proceeding by Order to Show Cause, dated February 28, 2003, seeking injunctive relief. The Petitioners also requested a money judgment in the amount of civil penalties which were imposed by Administrative Law Judge, John Wiley, in a decision following an administrative hearing before the Department of Health, dated January 15, 2003, in which it was found that the Respondent was operating an unlicensed adult care facility, in violation of Sections 460-b(1) and 461-b(2) of the Social Services Law.
The Order to Show Cause also contained a Temporary Restraining Order which required that the Respondent permit the Petitioner and his designees "unfettered access" to the premises located at 428 North Main Street and 6038-6039 Neversink Road, Liberty, New York, in order for the Petitioner to effect the transfer of certain identified residents to licensed adult care facilities.
At the commencement of this proceeding, the Court appointed John Ferrara, Esq., as the Guardian ad Litem for residents in the Respondent's facilities who have been determined to be persons who are "by reason of physical or other limitations associated with age, physical or mental disabilities or other factors, [are] unable or substantially unable to live independently" as defined in Social Services Law §2(21), and who are commonly referred to as "dependent adults."
Charles A. Giulini, Esq. applied to this Court by Order to Show, dated March 13, 2003 for permission to intervene on behalf of three residents, or former residents, of Respondent's facilities, K.B., N.G., and B.W.[FN1] (hereinafter referred to as the "Intervenors"), which permission was granted by Order dated May 9, 2003. Subsequent to that Order, Mr. Giulini advised the Court that he did not intend to file an answer, nor to continue his efforts to intervene, and therefore, this issue is now moot.
By Orders to Show Cause, dated March 7, 2003 and March 24, 2003, the Petitioners then asked that the Respondent be held in civil contempt, based upon his failure to comply with the Temporary Restraining Order, and for the appointment of a Temporary Receiver pursuant to Section 460-d(5) of the Social Services Law.
By Order dated April 17, 2003, a Temporary Receiver was appointed and the Respondent was held in civil contempt. In the course of these proceedings, all of the identified dependent adults were transferred from the Respondent's facilities, thereby effectively satisfying the Petitioner's request for relief that the unlicensed adult care facility at 6038 and 6039 Neversink Road in the Town of Liberty, and the family-type home for adults at 428 North Main Street in the Village of Liberty, being operated by the Respondent, Frank Cuttita be closed.
The Order which found the Respondent in contempt set the matter down for a hearing on the issue of the amount of the penalty. The hearing was originally scheduled for March 31, 2003, but it was adjourned several times, as the Petitioners were still incurring expenses which were potentially relevant on the issue of the amount of the contempt penalty. In October of 2003 the parties presented a Stipulation to the Court in which it was agreed that the Respondent would pay the sum of $5,000.00 as and for a civil contempt penalty and attorneys fees, reserving all of the Respondent's rights and defenses on appeal. During a telephone conference with the Court on [*3]October 3, 2003, it was agreed that any further determinations which the Court was required to make in this matter, for example on the issues of payment of the Guardian Ad Litem's fee, the demand for a permanent injunction, and the severance of the Respondent's Article 78 Petition, should be decided on the papers already submitted herein.
Compensation Guardian Ad Litem The stipulation of settlement did not provide any mechanism for payment of the Guardian Ad Litem's fee in the amount of $5,292.50, nor was the Guardian Ad Litem invited to participate in the settlement negotiations by counsel for the Petitioners and the Respondent. The Guardian Ad Litem has made a separate application requesting that the Court order that the Guardian Ad Litem's compensation be considered as an additional fine for civil contempt, and that the Respondent be sentenced to a six month period of incarceration, without right to credit for good time, which could be eliminated upon the payment of the fine in the amount of $5,292.50.
The Guardian Ad Litem's motion was opposed by the Respondent, in which he argues that any application to assess fines is premature pending a determination on the application to vacate and set aside the determination of ALJ Wiley.
The Court shall deny that portion of the Guardian ad Litem's application that his fee be assessed to the Respondent as an additional fine for civil contempt, pursuant to Section 773 of the Judiciary Law. In State v. Unique Ideas, Inc., 44 NY2d 345, 405 NYS2d 656 [1978] the Court of Appeals observed that a fine for civil contempt is designed to compensate and indemnify private complainants, and is payable to the aggrieved party. Section 773 of the Judiciary Law provides that a fine in civil contempt may be used to indemnify a "party to an action or special proceeding," who is referred to as an "aggrieved party." Since the Guardian Ad Litem is not a party to this proceeding, and therefore does not fit within the definition of an aggrieved party, the Court finds that to award the fees of a Guardian Ad Litem as a fine for civil contempt is not authorized under the requisite strict construction of the statute (Loeber v. Teresi, 256 AD2d 747, 681 NYS2d 416 [3rd Dept., 1998]).
Section 1204 of the CPLR provides that the court may require that a guardian ad litem's fee be paid by any party, provided that the amount of the fee is supported by an affidavit showing the services rendered. The Court finds that the Guardian ad Litem, John Ferrara, Esq., has sufficiently supported and established his fee in the amount of $5,292.50, and the Court finds the fee to be fair and reasonable. The Court shall, therefore, require that the amount of such fee shall be paid by the Petitioners herein. In People v. Introductions, Inc., 252 AD2d 631, 675 NYS2d 189 [3rd Dept., 1998]), which involved a special proceeding brought pursuant to Section 63(12) of the Executive Law, and addressed the compensation of a court appointed referee, the Appellate Division found that if the Referee's ability to obtain compensation would be jeopardized by holding the Respondent liable for such compensation, the Petitioning State could be required to pay the referee's fee, and to tax these fees to the Respondent as costs (see, also, Perales v. Cuttita, 127 AD2d 960, 512 NYS2d 565 [3rd Dept., 1987], cf., Board of Education of Northport-East Northport Union Free School District v. Ambach, 90 AD2d 227, 458 NYS2d 680 [3rd Dept., 1982], aff. 60 NY2d 758, 469 NYS2d 669 [1983], which held that the fee for the Guardian Ad Litem should be assessed against the party whose improper actions prompted the proceeding). In People v. Introductions, Inc, supra., the Court found that if the causes asserted by Petitioner are meritorious, the Petitioner could obtain an award of costs for the fees and [*4]expenses (CPLR §8301(1) and (12)).
Accordingly, The Court shall grant the Guardian Ad Litem's request for a fee in the amount of $5,292.50, which amount shall be assessed against the Petitioners herein, and added as costs to the judgment entered herein.
Summary Judgment Executive Law §63(12) and Cross-Petition for Article 78
The Petitioner has requested that the Court award the Petitioners summary judgment granting permanent injunctive relief, pursuant to Section 63(12) of the Executive Law, and to enforce the ALJ's determination to close the Neversink Road facility and to reduce the civil penalty awarded therein to an enforceable money judgment.
The Petitioners had previously brought an administrative enforcement proceeding against the Respondent alleging that he was operating one or more unlicensed adult care facilities in the Town of Liberty, New York. Following four days of hearings, an administrative determination was made by Administrative Law Judge John Wiley, dated January 15, 2003, in which the Respondent was ordered to close the unlicensed adult care facility which he was found to be operating at 6038 and 6039 Neversink Road [FN2] in the Town of Liberty, New York. In addition to ordering the closure of the Respondent's facility, a civil penalty in the amount of $1,000.00 per day, commencing on April 22, 2003 and continuing until the Respondent closes the facility at 6038-6039 Neversink Road was imposed. The ALJ made a finding that the Department of Health did not have jurisdiction over the 428 North Main Street facility because there were fewer than five dependent adults residing there.
The Petitioning Commissioner of the Office of Children and Family Services seeks an order of closure with regard to the North Main Street facility, asserting that it has jurisdiction over that facility, and because there was evidence introduced at the administrative hearing that there were two dependent adults residing there.
The Petitioner asserts that the evidence demonstrates irrefutably that the Respondent is operating an unlicensed adult care facility at 6038-6039 Neversink Road, and a family-type adult home at 428 North Main Street. The Petitioner attached to its papers a certified transcript of the administrative hearing in which it was established that eleven of the residents of the Neversink Road facilities were "dependent adults" because of their various physical and/or mental disabilities, they were unable or substantially unable to live independently (SSL §2(21), 18 NYCRR §490.2). There was also evidence contained in the record of the administrative hearing that there were at least two residents at the 428 North Main Street address who were dependent adults, in that they were incapable of independent living and required assistance with the management of their medications and their money [FN3].
[*5]
The Petitioners are empowered pursuant to Section 63(12) of the Executive Law to bring a special proceeding for injunctive relief whenever a person engages in persistent "fraud or illegality, including the violation of a statute or local law or regulation (State of New York v. Princess Prestige, 42 NY2d 104, 397 NYS2d 360 [1977]. The Court's powers to grant injunctive relief under Section 63(12) of the Executive Law are extremely broad, and the Petitioner has requested that the Respondent not only be enjoined from violating the law in the future, but that all future boarders be screened by DOH or OCFS, or their County designee, to confirm that any boarder admitted to the Respondent's facility is capable of living independently. The Petitioners allege that the Respondent is operating an "unlicensed adult care facility" at 6038 and 6038 Neversink Road, Liberty, New York. An "adult care facility" is defined in the Social Services Law §2(21), in pertinent part, as follows:

Adult care facility shall mean a family type home for adults, a shelter for adults, a residence for adults, an enriched housing program or an adult home, which provides temporary or long-term residential care and services to adults who, though not requiring continual medical or nursing care * * *, are by reason of physical or other limitations associated with age, physical or mental disabilities or other factors, unable or substantially unable to live independently.
The Department of Health is responsible for the licensure of adult homes and residences for five or more dependent adults, pursuant to 18 NYCRR §§485.2(b) and (d).
The Petitioners also allege that the Respondent is operating a "family-style home for adults" at 428 North Main Street, Liberty, New York.
The Office of Children and Family Services is responsible for the licensure and regulation of "family-type homes for adults" which house four or fewer dependent adults, who are unrelated to the operator (SSL §2(22), 18 NYCRR §489.2, see also, SSL §460-b(1), 18 NYCRR §485.5 and 485.6).
The Office of Mental Retardation and Developmental Disabilities is charged with insuring that mentally retarded or developmentally disabled persons receive adequate, skilled, and safe care and supervision (MHL §§16.19, 16.21).
The Petitioners have alleged in the instant proceeding that, by virtue of the fact that there are individuals living at the Respondent's facilities located on Neversink Road and North Main Street who are unable to live independently, and that the Respondent neither applied for nor obtained the appropriate licenses to operate these facilities, that he is subject to the current enforcement action.
[*6]
It is asserted by the Petitioners that the Office of Children and Family Services did not previously bring an administrative proceeding with respect to the North Main Street property because both it and the Department of Health believed that all three locations were part of a single business and should be regulated and licensed as such.
Following the issuance of ALJ Wiley's decision, representatives from the Office of Children and Family Services, together with Sullivan County Health professionals, went to the North Main Street facility where they determined that there were at least three residents who were incapable of living independently.
The Petitioner points to 18 NYCRR §490.7, which list many of the services which comprise the supervision and case management services which licensed adult care facilities must provide. The Petitioners claim that there are residents at all three buildings operated by the Respondent who are incapable of self-administering his or her medication, which is one of the services which may be required to be provided by licensed adult care facilities.
There was extensive testimony taken before the Administrative Law Judge to establish that certain of the residents of the Neversink Road facility and the North Main Street facility were dependent adults, and the Respondent has not presented any factual evidence to refute the evidence that certain of the residents of his facilities are incapable of independent living, he instead makes several legal arguments to challenge the Petitioners' authority to proceed under the facts and circumstances presented herein.
 The Respondent first makes the argument that the residents have a constitutional right to live wherever they wish, even if they are eligible to live in an adult care facility. In order to prohibit an adult from living wherever he or she chooses, the Respondent argues that the Petitioners must first establish that the residents require the appointment of a guardian pursuant to Section 1750 of the Surrogate Court Procedure Act (SCPA) or a committee pursuant to Article 81 of the Mental Hygiene Law.
The Respondent next argues that ALJ Wiley misapplied the statutory standard because adult care facilities are defined by the type of services they provide. The Respondent claims that by virtue of the limited services which he is providing, a room with two meals a day, he is only operating a boarding house, and is not operating an adult care facility, or a family-type homes for adults. The Respondent asserts that the residents are not provided with the kinds of comprehensive supervision and care which are provided at state regulated adult care facilities, and therefore he is not subject to the state regulations concerning adult residences.
The Respondent also argues that there is a prior decision in a proceeding brought before the Sullivan County Supreme Court in 1984 which resulted in a determination that he was not operating an unlicensed adult care facility, and that that decision is res judicata to the issues raised herein.
Finally the Respondent argues that the ALJ, in his determination that certain of the residents of his facilities were incapable of living independently, improperly relied on the testimony of social workers and nurses. It is the Respondent's argument that such a determination must be based upon testimony of appropriate credentialed medical professionals.
[*7]
The Petitioner argues in response to the Respondent's claim that a resident who is incapable of living independently has a constitutional right to live at an unlicensed adult care facility is without merit. The Petitioner indicates that Adult Care Facilities require a license (SSL §460-b(1), 18 NYCRR §485.1(d), 485.5 and 485.6), and are subject to inspection to determine whether minimum standards are being observed (SSL §461-a, 18 NYCRR §486.2). Section 460-d(9) of the Social Services Law authorizes the Department of Health to close unlicensed adult care facilities and /or to impose a civil penalty (see, also 18 NYCRR §486.4). Section 460-d(9)(c) of the Social Services Law and 18 NYCRR §§486.2(e)(6), 486.3 provide that inspections are permitted to determine if a facility is subject to licensure.
The Petitioner argues in response to the Petitioner's re judicata argument that the determination in the proceeding in 1984 is not res judicata, nor does it collaterally estop the Petitioners from inspecting his facility to insure compliance with Article 7 of the Social Services Law. The Petitioner argues that the passage of time and a change of circumstances since that earlier determination would bar any res judicata or collateral estoppel effect of the 1984 case. In addition, the Petitioner argues that the Order of Judge Kahn, from the August 24, 1984 Special Term, was not a final judgment resolving the case.
Finally, the Petitioner argues that the Respondent has confused the issue of the determination of legal competency with that of assessing a resident's ability to live independently. The Petitioner argues that the Administrative Law Judge's determination as to the resident's ability to live independently can be based upon the recommendations of nurses and social workers, and that neither the statutes, nor the regulatory scheme promulgated pursuant thereto, require that a determination that an adult is incapable of living independently also requires a determination that such adult is incompetent or incapacitated.
A proceeding brought pursuant to Section 63(12) of the Executive Law is a "special proceeding, commenced by a verified petition. The issues raised in the petition are to be summarily determined on the papers "to the extent that no triable issues of fact are raised" (CPLR 409[b]). The petition is treated in a similar fashion as a motion for summary judgment (People v. Vacco v. Lipsitz, 174 Misc2d 571, 663 NYS2d 468 [S.Ct., NY Co., 1997]). In order to defeat a Section 63(12) petition, the Respondent must "present facts having probative value sufficient to demonstrate an unresolved material issue which can be determined only at a plenary trial" (State v. Princess Prestige Co., supra.). The standards governing the special proceeding are similar to those applied by a court on a motion for summary judgment. Thus, where the petition and supporting papers establish that the Respondent is violating a state law, for example, operating an adult care facility without a license, the Respondent shall have the burden of raising a triable issue of fact by an evidentiary showing, and without such, judgment without trial is proper (People ex rel. Spitzer v. Telehublink Corp., 301 A.D.2d 1006, 756 NYS2d 285 [3rd Dept., 2003]).
The Respondent has attempted to argue, on behalf of the residents of his facility, that they have a protected interest in being able to chose where they live, in the absence of a proceeding which finds such residents to be incompetent. A person who is found to be a dependent adult has no more of a liberty interest to reside in an unlicensed adult care facility than a tenant has a liberty interest in continuing to reside in a building which has been condemned by [*8]a municipal authority. In addition, even if the residents have a valid due process argument regarding the finding that they are unable to live independently, this argument belongs to the residents and the Respondent does not have standing to argue same (Roebling Liquors, Inc. v. Commissioner of Taxation and Finance, 284 AD2d 669, 728 NYS2d 509 [3rd Dept., 2001], Judge Rotenberg Educational Center v. Maul, 230 AD2d 278, 658 NYS2d 493 [3rd Dept., 1997]).
The constitutionality of the Petitioner's regulation of an industry which cares for the State's aged and infirm has been upheld as a proper exercise of State's police power (Silvian v. Shang, 70 AD2d 704, 416 NYS2d 671 [3rd Dept., 1979]). In Carrier v. Salvation Army, 88 NY2d 298, 644 NYS2d 678 [1996] the Court of Appeals explicitly recognized that the extensive regulatory scheme authorized by Article 7 of the Social Services Law, which governs the operation of residential care programs for adults and children, gives the Petitioner, the DOH [FN4], "comprehensive responsibility" for the administration and supervision of residential care facilities, and endows the DOH "with broad enforcement powers to ensure proper care and treatment of residents, including the power to investigate facilities (with all the attendant powers available to court-appointed Referees); to issue orders directing the management of a facility to rectify health and safety violations; to revoke, suspend or limit a facility's operating certificate; and to assess civil penalties for violations of Department regulations and orders."
The Court finds no basis for the Respondent's assertion that a determination that a person who is a dependent adult as defined by the Social Services Law cannot be based upon evidence presented by a nurse or social worker. This is in contrast to the provisions of Section 1750 of the Surrogate's Court Procedure Law, which specifically requires the introduction of medical testimony to appoint a guardian for a person with mental retardation and developmental disabilities.
The Court also finds that Judge Kahn's determination in 1984 (Perales v. Cuttita, Index # 1094/84 (S.Ct., Sullivan Co.) is not res judicata, nor does it serve to collaterally estop the DOH from investigating the Respondent. Not only was this argument not raised before the ALJ, and it is therefore waived (Yonkers Gardens Co. v. State Division of Housing and Community Renewal, 51 N.Y.2d 966, 435 N.Y.S.2d 706 [1980]), but Judge Kahn's determination only denied an application for a preliminary injunction, and was not a final judgment on the merits (See generally, Schwartz v. Public Admr. Of County of Bronx, 24 NY2d 65, 298 NYS2d 955 [1969]).
The Respondent also claims that ALJ Wiley misapplied the statutory standard, and argues that an adult care facility is defined by the services it provides (See, Respondent's Memorandum of Law, dated March 19, 2003). Although the services required by a dependent adult are an indicia of their dependent status, it is the number of adults residing at a facility who are "unable or substantially unable to live independently" which defines whether the facility is an adult care facility or family type adult home (See, Bielecki v Perales, 152 AD2d 568, 543 NYS2d 496 [3rd [*9]Dept., 1989]). The Respondent's decision to discontinue providing services, for example, the management of the residents' money and medications, and arranging for health and mental health services, is not determinative of whether the facility is subject to state licensure. The Petitioners have established by unrefuted factual evidence at the administrative hearing, that there were more than five dependent adults residing at the Neversink Road facility, and two resident residing at the North Main Street facility who were unable to live independently.
Accordingly, since the Respondent has failed to establish any material issue of fact as to the unrefuted factual evidentiary proof that the Respondent is operating an unlicenced adult care facility and an unlicensed Family-type adult home, the Court shall grant summary judgment in favor of the Petitioners herein (Cahill v. Harter, 277 AD2d 655, 716 NYAS2d 447 [3rd Dept., 2000]).
A permanent injunction prohibiting the operation of an unlicensed adult care facility or family type adult home is the appropriate remedy to insure that the statute will not be flouted (City of New York v. Les Hommes, 258 AD2d 284, 685 NYS2d 49 [1st Dept., 1999]). The Court shall, however, deny the request that the Respondent submit for pre-approval each potential resident at his facility. The Court shall instead enjoin the Respondent from accepting any dependent adults at his facility, and he shall be enjoined from continuing to operate any type of boarding facility unless a performance bond in the amount of one hundred thousand dollars ($100,000.00) is posted to ensure that no such dependent adults are permitted to reside at his facility (See, People v. Koppel v. Empyre Inground Pools, Inc, 227 AD2d 731, 642 NYS2d 344 [3rd Dept., 1996], in which the Respondents therein, in an action brought pursuant to Section 63(12) of the Executive Law were permanently enjoined respondents from engaging in the home improvement and door-to- door sales businesses in New York and were also enjoined from engaging in any business dealing with consumers until a $100,000 performance bond was filed with petitioner, See also, People ex rel Spitzer v. Telehublink Corp., supra.)
In opposition to the Petitioner's application, the Respondent submitted an Answer and Notice of Cross Petition to vacate and set aside the "Decision After Hearing" of Administrative Law Judge John Wiley. The Respondent failed to submit a pleading specifically denominated as an Article 78 Petition, but relied on the Affirmation in Opposition of his attorney, Albert A. Gaudelli, Esq., an affidavit of the Respondent, and a Memorandum of Law. The Petitioner points out in its verified answer to the cross-petition that the Respondent's Article 78 appeal is clouded with procedural irregularities, e.g., it was served the same day it was returnable in violation of CPLR §§403(b) and 7804(c); it was only served on the Attorney General which they claimed was insufficient to confer personal jurisdiction (see, Matter of Taylor v. Poole, 285 AD2d 769, 728 NYS2d 563 [3rd Dept., 2001]); and, the papers did not consist of a petition, but only contained an affirmation by an attorney with no personal knowledge of the facts and an affidavit by the Respondent which did not contain a prayer for relief (see, Klein v. Haft, 68 AD2d 872, 415 NYS2d 1 [1st Dept., 1979]). The Petitioners have indicated, however, that they do not seek dismissal for the irregularities, but asks that the Petition be severed and transferred to the Appellate Division to address any issue raised with respect to whether the application was supported by substantial evidence. In response, the Respondent argues that the Article 78 Petition should not be severed and that the issue presented in the Article 78 is not one of [*10]substantial evidence, but rather is a challenge to the Petitioner's authority to require that the Respondent supply extra health care and supervisory services to residents who chose not to accept such services. The Respondent argues that the residents of his facility have the choice to whether they wish to live at a licensed adult care facility.
The Appellate Division has, however, indicated its willingness to overlook certain procedural irregularities in Article 78 pleadings (e.g., City of Rensselaer v. Duncan, 266 AD2d 657, 698 NYS2d 113 [3rd Dept., 1999], deficient verification not a jurisdictional defect, Shankman v. Axelrod, 137 AD2d 255, 528 NYS2d 937 [3rd Dept., 1988], absence of a petition verified by the Petitioner excused where petitioner in a later affidavit ratifies, affirms and adopts as his own averments those contained in his attorney's affirmation; see, also, Marmo v. Department of Environmental Conservation, 134 AD2d 260, 520 NYS2d 442 [2nd Dept., 1987], papers not properly denominated, but fulfilled the purposes of a notice of petition and petition, since they gave notice as to what administrative action was being challenged, the events upon which the action was taken, the basis of the challenge and the relief sought, and permitted service upon the State agency rather than the Attorney General, where the Attorney General received the papers, service was found to be complete).
Accordingly, the Court finds that, while both in artfully drafted and not in the proper form, the Respondent's papers shall be accepted by this Court as an Article 78 proceeding to annul and set aside the determination of ALJ Wiley.
The Petitioner has requested that the Article 78 proceeding be severed and transferred to the Appellate Division to address whether ALJ Wiley's decision was supported by "substantial evidence," pursuant to Section 7804 of the CPLR. The standard of review on a substantial evidence analysis is whether the agency's determination is supported by such relevant proof as a reasonable mind may accept as adequate (300 Gramatan Avenue Associates v. State Divsion of Human Rights, 45 NY2d 176, 408NYS2d 54 [1978]). It is not, however, the parties' characterization of the issues that determines whether a proceeding must be transferred (Robinson v. Finkel, 194 Misc2d 55, 748 NYS2d 448 [S.Ct., NY Co., 2002]).
In the case at bar, the Court finds that the challenge is not one of substantial evidence, but rather the Respondent has made four legal arguments as the basis to overturn and annul the ALJ's determination.
Where the Petitioner in an Article 78 proceeding is arguing about the interpretation of statutes and regulations, and their application to the facts, these issues should be addressed by the Supreme Court in the first instance (Westmount Health Facility v. Bane, 195 AD2d 129, 606 NYS2d 832 [3rd Dept., 1994], Maliszewski v. Regan, 144 AD2d 170, 534 NYS2d 718 [3rd Dept., 1988])).
The Respondent's first argument was that, even if the residents of his facility qualify to reside in an adult care facility, they are free to chose to live elsewhere. As is set forth above, the Respondent lacks standing to argue that the determination that certain of the residents of the Respondent's facilities were dependent adults was made in violation of their due process rights. Accordingly, this does not provide a basis upon which the Respondent can ask that the administrative determination be annulled and vacated.
The Court has also addressed the claim that the ALJ misapplied the statutory standard, and any argument that the Petitioners have exceeded their authority in determining that the [*11]Respondent is operating an unlicensed adult care facility, and that the Respondent's facility cannot be subject to an order of closure are devoid of merit.
 In addition, the Court has decided herein that the prior determination of Judge Kahn denying an application for a preliminary injunction is not res judicata as it was not a final adjudication on the merits in that proceeding, and in any event, it was not raised before the administrative Law Judge and cannot, therefore, provide the basis to annul and vacate the ALJ's decision (Puterio v. Regan 161 AD2d 1109, 557 NYS2d 664 [3rd Dept., 19990]).
Accordingly, the Court hereby dismisses the Respondent's Article 78 application to annul and vacate the ALJ determination. 
Judgment for Civil Penalty The Petitioners seek the entry of a judgment for the civil penalties in the minimal amount of $312,000.00 [FN5] imposed in ALJ Wiley's Decision, dated January 15, 2003.
The Respondent argues that the penalty will wipe out the Respondent economically, and "is unfair, unjustified and dependent of the validity of the administrative determination" "(Gaudelli Affirmation in Opposition, dated March 19, 2003, ¶23).
In Perales v. Bielecki, 210 AD2d 466, 621 NYS2d 94 [2nd Dept., 1994] the Court upheld the imposition of a $265,000 civil penalty, pursuant to Section 460-d of the Social Services Law, against the Defendant for operating an unlicensed adult care facility. Similar to the case at bar, a cumulative penalty in the amount of $1,000.00 was imposed for every day that the Defendant operated a unlicensed adult care facility. The Bielecki Court observed that such penalties provide the means by which the department may enforce the standards which are designed to protect the health and well-being of the residents of such adult care facilities.
The determination of ALJ Wiley imposed a civil penalty in the amount of $1,000.00 per day, commencing on April 2, 2002 and continuing until Frank Cuttita closed the Neversink Road adult care facility.
Therefore, the Court shall grant the Petitioner's request that the amount of civil penalties imposed by the ALJ following the Administrative Hearing, shall be reduced to a money judgment. Robert P. Dougherty, Director of the Division of Home and Community Based Care of the New York State Department of Health, submitted an affidavit to the Court, dated June 3, 2003, in which he stated that, as of June 1, 2003, all of the residents of the Cuttita premises who were had been found to be unable to live independently had been transferred from the facilities operated by the Respondent. Accordingly, the penalty assessed by the Hearing Examiner Court shall be calculated from its effective date on April 22, 2002 until June 1, 2003, when all of the dependent adults had been transferred therefrom. This period consists of 405 days, and the resulting judgment shall total $405,000.00, and the County Clerk is hereby directed to file a judgment in that amount, in favor of Antonia C. Novello, M.D., M.P.H., Dr. P.H., Commissioner of Health of the State of New York, and against the Respondent, Frank Cuttita.
Motion for Leave to Submit Certificate
of Conviction into Evidence,
[*12]
Request for Conditional Order of Incarceration and
Cross-Motion to Stay Proceedings
The Petitioner submitted a motion October 1, 2003 in which permission was sought to introduce into evidence a Certificate of Conviction, signed by the Hon. Jeffrey Altbach, Town of Liberty Justice Court, in which the Respondent was convicted on September 23, 2003, of the misdemeanor, Knowing Operation of an Adult Care Facility without Written Approval, in violation of Section 461-b(2)(C) of the Social Services Law. The application was opposed by the Respondent.
The decision of this Court set forth above has granted summary judgment on the Petitioner's application brought pursuant to Section 63(12 of the Executive Law and dismissed the Respondent's Article 78 Petition, thereby rendering the issues presented in this motion to be academic questions.
The Petitioner has also requested that the Court issue an order pursuant to Judiciary Law §774(1) imposing a fine of $5,000.00 , and directing that he be incarcerated for a period of six months upon condition that the Respondent's incarceration would be terminated immediately upon payment of the $5,000.00 fine.
In response the Respondent requested that all proceeding concerning contempt, fines and punishments, costs and legal fees be stayed until a determination is made on Respondent's cross-motion to vacate an set aside the ALJ's determination.
The Court finds that it is appropriate to require that the fine for civil contempt stipulated to by the parties in the amount of $5,000.00 shall be paid within thirty days of service of a copy of this Order with notice of entry, upon Respondent's counsel, and upon the Respondent's default in the payment of the fine, the Respondent shall be incarcerated in the Sullivan County Jail for a period not to exceed six months, which period of commitment can be avoided or shortened upon payment of the said fine (Jud. Law §774, People ex rel Kuby v. Warden, Brooklyn House of Detention, 305 AD2d 339, 757 NYS2d 889 [2nd Dept., 2003], Lapkin v. Lapkin, 224 AD2d 199, 637 NYS2d 389 [1st Dept., 1996]).
Conclusion
Wherefore, based upon the foregoing, it is hereby 
ORDERED that the Respondent is directed to pay the fine for civil contempt stipulated to by the parties in the amount of $5,000.00 within thirty days of service of a copy of this Order with notice of entry, upon Respondent's counsel, and upon the Respondent's default in the payment if such fine, the Respondent shall be incarcerated in the Sullivan County Jail for a period not to exceed six months, which period of commitment can be avoided or shortened upon payment of the said fine, and it is further
ORDERED that the fee of the Guardian ad Litem, John Ferrara, is hereby established in the amount of $5,292.50, which amount shall be assessed against the Petitioners, and taxed as a cost to the judgment entered herein against the Respondent; and it is further
ORDERED that the Petitioner is granted summary judgment on its application pursuant to Section 63(12) of the Executive Law, and the Respondent is directed that the adult care facility located at 6038 and 6039 Neversink Road, liberty, New York, and the family type adult home located at 428 North Main Street, Liberty, New York, shall remain closed in accordance [*13]herewith; and it is further
ORDERED that the Respondent shall be permanently enjoined from accepting any dependent adults at his facilities, and he shall be enjoined from continuing to operate any type of boarding facility unless a performance bond in the amount of one hundred thousand dollars ($100,000.00) is posted to ensure that no such dependent adults are permitted to reside at his facility; and it is further
ORDERED that a judgment in the amount of four hundred and five thousand dollars ($405,000.00) shall be entered in favor of Antonia C. Novello, M.D., M.P.H., Dr. P.H., Commissioner of Health of the State of New York, and against the Respondent, Frank Cuttita, and the County Clerk is hereby directed to file a judgment in that amount, together with the costs and disbursements of this action; and it is further
ORDERED that the Respondent's Article 78 Petition seeking to vacate and annul the determination of Administrative Law Judge for the New York State Department of Health, John Wiley, dated January 15, 2003, is hereby dismissed.
This memorandum shall constitute the Decision and Order of this Court. The original Decision and Order, together with the papers and pleadings heretofore had herein have been forwarded to the Clerk's office for filing. The filing of this Order does not relieve counsel from the obligation to serve a copy of this order, together with notice of entry, pursuant to CPLR § 5513(a).
Dated: December 4, 2003
Monticello, New York
E N T E R:__________________________________________
 HON. MARK M. MEDDAUGH
Acting J.S.C.
Papers Considered: 
1. Order to Show Cause and Temporary Restraining Order, dared February 28, 2003
2. Verified Petition, Executive Law §63(12) verified by G. Nicholas Garin , Esq., on February 27, 2003 
3. Affirmation of G. Nicholas Garin, Esq., affirmed on February 27, 2003, together with the exhibits annexed thereto 
4. Answer and Notice of Cross-Petition to Vacate and Set Aside Administrative Decision after Hearing, dated March 19, 2003
5. Affirmation in Opposition of Albert A. Gaudelli, Esq., March 19, 2003 
6. Affidavit of Frank Cuttita, sworn to March 18, 2003
7. Respondent's Memorandum of Law, dated March 19, 2003
8. Verified Answer to Cross-Petition, verified by G. Nicholas Garin, Esq., on April 14, 2003
9. [*14]Affirmation in Reply to Opposition to 63(12) Petition and in opposition to Cross-Petition pursuant to Article 78, of G. Nicholas Garin, affirmed on April 14, 2003 
10. Reply Memorandum of Law in Support of the 63(12) Petition and in support if dismissal of Respondent's Cross-Petition, dated April 14, 2003 
11. Reply Affirmation of Albert A. Gaudelli, Esq., affirmed on May 5, 2003 
12. Reply Affidavit of Frank Cuttita, sworn to May 5, 2003
13. Stipulation of Settlement, submitted on September 20, 2003 
14. Record of Administrative Proceeding before Administrative Law Judge, Volumes 1-5 
15. Order settled May 28, 2003 for fees of Guardian ad Litem 
16. Affidavit of Service of John Ferrara, Esq., sworn to May 12, 2003 
17. Notice of Motion, submitted on October 1, 2003 
18. Affirmation of G. Nicholas Garin, Esq., affirmed on October 1, 2003
19. Affirmation in Opposition of Albert A. Gaudelli, Esq., affirmed on October 16, 2003 
20. Reply Affirmation of G. Nicholas Garin , Esq., affirmed on October 20, 2003 
21. Notice of Cross-Motion, dated October 13, 2003 
22. Affirmation of John Ferrara, Esq., affirmed on October 13, 2003 
23. Respondent's Notice of Cross-Motion and Affirmation in Opposition of Albert A. Gaudelli, Esq., dated October 16, 2003
24. Affirmation in Support of Respondent's Cross-motion and in Opposition to Ferrara's Cross-motion, of Albert A. Gaudelli, Esq., affirmed on October 16, 2003 
25. Memorandum of Law in Support of Order of Incarceration as Punishment for Respondent's Contempt
 
[*15]
C:\htformat\f5150630.txt
Decision Date: December 04, 2003
Footnotes

Footnote 1: Throughout this Decision, and in all papers and proceedings had herein , the residents of the Respondent's facilities are identified only by their initials to protect their privacy.

Footnote 2: The Administrative Law Judge made a specific finding that the facilities located at 6038 and 6039 Neversink Road collectively constitute a single facility. 

Footnote 3:See, Testimony of Kyle C. Henry, R.N., Record of Administrative Hearing Before John Wiley, Administrative Judge, Vol.3, pp. 410-415, with regard to B.W., a resident of the North Main Street facility, and the Testimony of Ellen Hoffman, M.S.W.., Record of Administrative Hearing Before John Wiley, Administrative Judge, Vol.4, pp. 593-596, and 597-598, with regard to B.W., a resident of the North Main Street facility.
See also, Testimony of Ellen Hoffman, M.S.W., Record of Administrative Hearing Before John Wiley, Administrative Judge, Vol 4, pp. 587-593; 596-597; and 621-632, with regard to R.D.C., a resident of the North Main Street facility. 

Footnote 4:The responsibility had formerly been granted to th Department of Social Services, but in 1997 (Chap. 436 of Laws of 1997, Section 122(d)( and (e) this authority was transferred to the Dept. of Health and the Office of Children and Family Services. 

Footnote 5:The Administrative Decision after Hearing, imposed a civil penalty of $1,000.00 per day, commencing on April 22, 2002, which was calculated to February 28, 2003 to equal $312,000.00.