[858 NE2d 318, 824 NYS2d 771]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK CUTTITA, Appellant.

Argued September 14, 2006; decided October 24, 2006

**POINTS OF COUNSEL**

*Albert A. Gaudelli,* Forest Hills, for appellant. I. The evidence at trial is legally insufficient: defendant acted as a landlord collecting rent—nothing more and nothing less. (*People v Reed,* 40 NY2d 204; *People v Santos,* 38 NY2d 173; *Jackson v Virginia,* 443 US 307; *People v Contes,* 60 NY2d 620; *Warriner v Y.W.C.A. of Syracuse,* 137 Misc 2d 1054; *Matter of Crociata v State Tax Commn. of State of N.Y.,* 134 AD2d 112, 73 NY2d 726; *Fischer v Taub,* 127 Misc 2d 518; *Matter of Grinker [Rose],* 77 NY2d 703; *Rivers v Katz,* 67 NY2d 485; *Matter of Maher,* 207 AD2d 133.) II. The office of the Welfare Inspector General lacks jurisdiction to prosecute. (*People v Soddano,* 86 NY2d 727; *People v Van Sickle,* 13 NY2d 61; *Della Pietra v State of New York,* 71 NY2d 792; *Matter of Haggerty v Himelein,* 89 NY2d 431; *People v Romero,* 91 NY2d 750; *People v Gilmour,* 98 NY2d 126; *People v Fox,* 253 AD2d 192.) III. Expert testimony was improperly received on the definition of an adult facility. (*People v Johnson,* 76 AD2d 983; *People v Kirsh,* 176 AD2d 652, 79 NY2d 949; *People v Ciaccio,* 47 NY2d 431; *Torres v County of Oakland,* 758 F2d 147; *People v Lurie,* 249 AD2d 119, 92 NY2d 900; *People v Schwartz,* 21 AD3d 304; *People v A.S. Goldmen, Inc.,* 9 AD3d 283, 3 NY3d 703; *United States v Scop,* 846 F2d 135, 856 F2d 5.) IV. The use

of hearsay in business records amounted to trial by ambush. (*Crawford v Washington,* 541 US 36; *People v Pacer,* 6 NY3d 504; *Matter of Leon RR,* 48 NY2d 117; *People v Richardson,* 38 AD2d 990; *Stevens v Kirby,* 86 AD2d 391; *Boucheron v Tilley,* 87 AD2d 983; *Cummings v Fondak,* 122 Misc 2d 913; *People ex rel. McGee v Walters,* 62 NY2d 317; *People v Bridges,* 184 AD2d 1042, 80 NY2d 973; *People v Driscoll,* 251 AD2d 759, 92 NY2d 896; *People v Rogers,* 8 AD3d 888.) V. The trial court erred in advising the jury that it had attempted to "settle" the case and in reseating a juror that it had previously discharged. (*People v Moore,* 66 NY2d 1028; *People v Jackson,* 36 NY2d 922; *People v Weaver,* 177 NY 434; *People v Dlugash,* 41 NY2d 725.) VI. One cannot be required to evict third parties as a condition of probation. (*People v Letterlough,* 86 NY2d 259; *People v McNair,* 87 NY2d 772.)

*Eliot Spitzer, Attorney General,* New York City (*Megan P. Davis, Robin A. Forshaw* and *Michael S. Belohlavek* of counsel), for respondent. I. The office of the Attorney General had jurisdiction to prosecute defendant. (*Matter of Mann Judd Landau v Hynes,* 49 NY2d 128; *People v Gilmour,* 98 NY2d 126; *Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669; *People v Fox,* 253 AD2d 192.) II. The People proved beyond a reasonable doubt that defendant knowingly operated an unlicensed adult care facility. (*People v Williams,* 84 NY2d 925; *Jackson v Virginia,* 443 US 307; *People v Gray,* 86 NY2d 10; *Warriner v Y.W.C.A. of Syracuse,* 137 Misc 2d 1054; *Matter of Crociata v State Tax Commn. of State of N.Y.,* 134 AD2d 112, 73 NY2d 726; *Fischer v Taub,* 127 Misc 2d 518.) III. Defendant's claims of trial error are all either unpreserved or meritless. (*People v Everson,* 100 NY2d 609; *People v Tevaha,* 84 NY2d 879; *People v Lurie,* 249 AD2d 119; *People v Cronin,* 60 NY2d 430; *United States v Scop,* 846 F2d 135; *People v Schwartz,* 21 AD3d 304; *People v A.S. Goldmen, Inc.,* 9 AD3d 283; *United States v Bilzerian,* 926 F2d 1285; *United States v Duncan,* 42 F3d 97; *People v Iannelli,* 69 NY2d 684.) IV. The trial court properly ordered defendant, as a special condition of his probation, to cease operating an adult care facility without a license. (*People v Dlugash,* 41 NY2d 725; *People v Rocco,* 309 AD2d 882; *People v Turner,* 247 AD2d 821; *People v Ware,* 29 AD2d 557; *People v Myatt,* 248 AD2d 68; *People v McAllister,* 150 AD2d 913.)

### OPINION OF THE COURT

GRAFFEO, J.

In this case, defendant Frank Cuttita asserts that the office of

the State Welfare Inspector General was not statutorily authorized to prosecute him for knowingly operating an adult care facility without a license in violation of Social Services Law § 461-b (2) (c). Under the circumstances of this case, we agree that the Welfare Inspector General (WIG) lacked jurisdiction under the relevant statutes.

## I.

Since the mid-1980s, defendant has been engaged in a dispute with state authorities regarding several properties in the Town of Liberty, Sullivan County, that defendant operated as communal residences for adults (see Perales v Cuttita, 127 AD2d 960 [3d Dept 1987]). The State has maintained that the residences are unlicensed adult care facilities for persons who have "physical or other limitations associated with age, physical or mental disabilities or other factors" and are therefore "unable or substantially unable to live independently" (Social Services Law § 2 [21]). An adult care facility that offers long-term care to fewer than five adults unrelated to the operator is categorized as a "family type home for adults" (Social Services Law § 2 [22]) and must be licensed by the State Office of Children and Family Services (OCFS) (see Social Services Law § 460-b [1]; § 461-b [2] [a]; L 1997, ch 436, part B, § 122 [d]). A facility that provides similar care to five or more adults unrelated to the operator is designated as a "residence for adults" (Social Services Law § 2 [24]) or, if direct or indirect personal care is provided, an "adult home" (Social Services Law § 2 [25]), both of which must be licensed by the State Department of Health (DOH) (see Social Services Law § 460-b [1]; § 461-b [2] [a]; L 1997, ch 436, part B, § 122 [e]).[1]

Defendant has objected to applying for licenses from either DOH or OCFS on the basis that the properties are merely boarding houses not subject to state oversight and accreditation requirements. For a time, he successfully avoided the State's efforts to regulate the homes and his activities (see Perales v Cuttita, 127 AD2d at 961). In 1999, however, DOH received a complaint about defendant's operations and subsequently

---

1. When this controversy began, licensing authority was exercised by the Department of Social Services (DSS). In 1997, DSS was reorganized and renamed the Department of Family Assistance and its licensing powers were transferred to, among other entities, DOH and OCFS (see L 1997, ch 436, part B, § 122 [d], [e]). For purposes of this opinion, OCFS and DOH are referred to as the licensing agents during all times relevant to this appeal.

obtained a court order granting access to the residences. As a result of these inspections, DOH determined that defendant was operating adult care facilities without a license. After a hearing, an Administrative Law Judge substantially agreed with DOH's assessment and concluded that defendant had violated Social Services Law § 460-b (1) and § 461-b (2) by failing to obtain a license from DOH for the operation of an adult home.[2] Defendant was ordered to close the facility and pay a civil penalty of $1,000 per day of unlicensed operation after notification of DOH's decision. Also, in 1999, the WIG issued a written request to the Attorney General asking for an investigation of "any indictable offense or offenses in violation of the law which the Welfare Inspector General is especially required to execute."

Two judicial proceedings—one civil and one criminal—were then initiated against defendant. The Attorney General commenced a civil action seeking, among other relief, a permanent injunction to prohibit defendant from operating an adult care facility. Supreme Court found that the conclusions of the Administrative Law Judge were supported by substantial evidence and permanently enjoined defendant from operating an unlicensed adult care facility (*People v Cuttita*, 1 Misc 3d 904[A], 2003 NY Slip Op 51506[U] [2003]). The Appellate Division affirmed Supreme Court's order (*see Matter of People v Cuttita*, 12 AD3d 881 [3d Dept 2004], *lv denied* 4 NY3d 706 [2005]).

Defendant was also charged in the Town of Liberty Justice Court with one misdemeanor count of knowingly operating an adult care facility between June 1992 and October 2001 without written approval in violation of Social Services Law § 461-b (2) (c). The case was prosecuted primarily by an attorney affiliated with the office of the WIG, who was also designated a Special Assistant Attorney General.[3] On the eve of trial, defendant moved to dismiss the accusatory instrument, claiming that the WIG lacked jurisdiction to prosecute him under Executive Law § 74 (3) (d), which allows the WIG to initiate criminal actions

---

**2.** Charges relating to the other property, which the Administrative Law Judge found to be a family-type home for adults, were not sustained because OCFS—not DOH—had jurisdiction over that type of facility. The Administrative Law Judge also refused to impose any liability against defendant's wife, who owned the properties at issue, because he believed that she could not be held legally responsible for defendant's actions.

**3.** In addition to the prosecutor from the office of the WIG, an Assistant Attorney General from the Department of Law assisted with the prosecution. Accordingly, "the People," as that term is used in this opinion, collectively refers to both the office of the WIG and the Attorney General's office.

premised on "fraud, abuse or illegal acts perpetrated within the department of social services or local social services districts, or by contractees or recipients of public assistance services" (Executive Law § 74 [3] [d]). In response, the WIG asserted that the statute provided his office with authority to prosecute this matter and, in any event, he had sent a written request to the Attorney General to prosecute defendant pursuant to the procedures set forth in Executive Law § 63 (3), which confers jurisdiction to prosecute in the Attorney General upon the request of the head of certain state agencies, departments and offices.

Justice Court denied defendant's motion to dismiss and defendant proceeded to trial before a jury. The People presented evidence that, along with providing residents with housing and meals, defendant performed a variety of essential personal care and supervisory services for the residents, such as assisting with the management of finances, applying for public assistance, administering prescription medication, helping with personal hygiene, making health care appointments, supplying transportation to appointments with physicians and participating in treatment discussions with medical care providers. The People also adduced proof that several residents were incapable of living independently because of physical or psychological impairments, some of which required inpatient or outpatient mental health treatment. Based on this evidence, the jury convicted defendant of knowingly operating an adult care facility without a license. Defendant received a three-year sentence of probation, a condition of which was that he close the adult home.

On appeal, County Court affirmed defendant's conviction, concluding that the WIG had prosecutorial authority under both Executive Law § 63 (3) and § 74 (3) (d), and that the other claims of trial error raised by defendant were not meritorious. A Judge of this Court granted leave to appeal, and we now reverse.

## II.

Turning first to Executive Law § 74 (3) (d), defendant contends that the statute restricts the WIG's prosecutorial powers to illegal acts committed internally within DOH, OCFS or local social services districts, or by contractees or recipients of public assistance, none of which are implicated here. The People respond that the WIG had jurisdiction to prosecute because de-

fendant failed to comply with the regulations that apply to programs operated by DOH and OCFS.

The current structure and scope of authority of the office of the WIG is described in section 74, which was enacted as part of a comprehensive legislative package designed "[t]o implement cost containment initiatives and other cost reduction measures which will control Medicaid expenditure growth and produce savings for the State and local governments" (Mem in Support, Bill Jacket, L 1992, ch 41, at 9). Although the office of the WIG is empowered "to conduct and supervise investigations relating to the programs of the department of social services" (Executive Law § 74 [3] [b]), the statute limits the nature of its "investigations" to "fraud, abuse, or illegal acts perpetrated within the department of social services or local social services districts, or by contractees or recipients of public assistance services" (Executive Law § 74 [1] [b]). The WIG's authority to initiate criminal prosecutions is similarly restricted in section 74 (3) (d) to matters involving "fraud, abuse or illegal acts perpetrated within the department of social services or local social services districts, or by contractees or recipients of public assistance services" (Executive Law § 74 [3] [d]).[4]

Rather than vesting the WIG with a wide-ranging mandate to investigate and prosecute any programs or matters regulated by DOH or OCFS, the Legislature chose to confine the WIG's prosecutorial authority to fraud and illegality occurring "within the department of social services or local social services districts" (see Executive Law § 74 [3] [d]). Thus, the WIG's efforts, under this provision, must be limited to exposing fraudulent or criminal acts committed inside those governmental entities. The statute contemplates enforcement authority against, for example, illegal activities by state employees in connection with government-run programs, individuals who improperly obtain government benefits and, perhaps, those who seek to obtain a required license by making fraudulent statements or submitting false documents. But defendant was neither a state employee nor a contractee or recipient of government assistance services. And since he has steadfastly maintained that his facility was

4. We deem these statutory references to DSS to mean DOH, the department that became responsible for licensing adult homes when DSS was dismantled in 1997 (see L 1997, ch 436, part B, § 133).

not subject to licensing or oversight by DOH, his contact with the department was insufficient to bring his actions "within" DOH or OCFS for purposes of Executive Law § 74 (3) (d). Because the relevant statutory language does not evince an intent to provide the WIG with prosecutorial power to enforce statutory and regulatory licensing requirements subject to the jurisdiction of DOH and OCFS, under section 74 (3) (d) the WIG lacked authority to prosecute defendant for a violation of Social Services Law § 461-b (2) (c).

■ Nor may the power to prosecute this case be derived from the jurisdiction vested in the Attorney General under Executive Law § 63 (3). As we explained in *People v Gilmour* (98 NY2d 126, 129-132 [2002]), the Attorney General's historical authority to instigate criminal proceedings has over time been transferred to county district attorneys. As a result, the Attorney General now has no power to prosecute crimes unless specifically permitted by law (*see Della Pietra v State of New York*, 71 NY2d 792, 796-797 [1988]; *see also People v Gilmour*, 98 NY2d at 131; *People v Romero*, 91 NY2d 750, 754 [1998]).

Executive Law § 63 (3), however, grants the Attorney General jurisdiction to investigate and prosecute certain criminal conduct upon the specific request of state officials:

> "Upon request of the governor, comptroller, secretary of state, commissioner of transportation, superintendent of insurance, superintendent of banks, commissioner of taxation and finance, commissioner of motor vehicles, or the state inspector general, or the head of any other department, authority, division or agency of the state, [the Attorney General may] investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both, including but not limited to appearing before and presenting all such matters to a grand jury."

Thus, when presented with a proper Executive Law § 63 (3) request (*see People v Gilmour*, 98 NY2d at 133-134), the Attorney General may investigate and prosecute alleged illegal activity that falls under the statutory or regulatory authority of the officer making the referral.

Here, the WIG contends that his 1999 letter requesting that the Attorney General investigate and prosecute certain matters was sufficient to invoke the Attorney General's section 63 (3) prosecutorial powers, which the WIG could then exercise because his office is subsumed within the Department of Law (*see* Executive Law § 74 [2] [a]). We disagree. Even assuming that the WIG is the "head" of a "department, authority, division or agency of the state" who is authorized under Executive Law § 63 (3) to submit a written request for prosecution to the Attorney General, the correspondence requested the Attorney General to:

> "investigate the alleged commission of any indictable offense or offenses in violation of the law which *the Welfare Inspector General is especially required to execute* or in relation to *any matters connected to the Office of the Welfare Inspector General* and that you prosecute the person or persons believed to have committed the same and any crime or offense arising from such investigation or prosecution" (emphasis added).

Investigating adult care facilities and ensuring compliance with Social Services Law § 461-b (2) (c) and other licensing requirements are the responsibility of DOH and OCFS (*see* Social Services Law § 460-b [1]; § 461-b [2] [a]; L 1997, ch 436, part B, § 122 [d], [e]). Thus, it follows that the operation of an unlicensed adult care facility neither involves a law that the WIG is required to execute nor pertains to a "matter[ ] connected with" the WIG (Executive Law § 63 [3]).[5] Hence, the WIG cannot trigger the Attorney General's authority under Executive Law § 63 (3) to prosecute a matter that is not encompassed within the WIG's statutory powers. Consequently, defendant's conviction cannot stand and the complaint must be dismissed (*see People v Gilmour*, 98 NY2d at 132).

---

5. In fact, the Commissioner of Health, who is the head of a state department for purposes of Executive Law § 63 (3) (*see Matter of Mann Judd Landau v Hynes*, 49 NY2d 128, 137 [1979]), sent a referral letter to the Attorney General in 2002 asking him to "investigate and prosecute the alleged commission of any indictable offense . . . arising out of any violation of . . . the Social Services Law . . . relating to . . . the operation, management or funding of health-related entities and facilities subject to oversight by this Department, including . . . adult care facilities." In their brief to this Court, the People claim that this request is sufficient under section 63 (3) to invoke the Attorney General's prosecutorial authority. This argument was not raised in the courts below and, therefore, it is not preserved for review.

Our conclusion, based on the facts presented, that the WIG did not have the authority to prosecute this case renders defendant's additional claims of error academic.

Accordingly, the order of County Court should be reversed and the accusatory instrument dismissed.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, READ and R.S. SMITH concur; Judge PIGOTT taking no part.

Order reversed, etc.